[Civ. No. 4870. First Appellate District, Division One.—August 29, 1924.]

In the Matter of the Estate of CHARLES J. NEWMAN, Deceased. BANK OF ITALY, Executor, etc., Respondent, v. ELLA NEWMAN et al., Appellants.

[1] WILLS—CONSTRUCTION—INTENT OF TESTATOR.—The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible.

[2] ID.—TESTATOR'S HEIRS—TIME OF DETERMINATION.—In the absence of clear and unambiguous indications of a different intention to

---

1. See 28 R. C. L. 204.

2. Time of ascertaining member of class described as testator's "heirs," "next of kin," "relations," etc., to whom an estate in real or personal property is limited by way of remainder or executory gift, note, 33 L. R. A. (N. S.) 2. See, also, 28 R. C. L. 263.

be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder is given by will, is to be ascertained at the death of the testator; and to take a case out of such general rule there must be some special circumstances tending to show that the testator did not intend that the next of kin who were to take should be looked for at his death, but at some other period.

[3] ID.—MEANING OF "HEIRS."—The word "heirs" is a technical term, and in its "technical sense" one's "heirs" means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statute relative to succession.

[4] ID.—TRUSTS—DISTRIBUTION OF INCOME—DEVISE OF RESIDUUM TO HEIRS AT LAW — CONSTRUCTION OF WILL — TIME. — Where a will creates a trust for the distribution of the income from the decedent's estate, in certain specified proportions, during the lives of certain named persons, and provides that such trust shall terminate upon the death of the survivor of said persons "and upon said termination" the trustee "shall convey, deliver, pay and transfer to my heirs at law, wherever and whoever they may be, according to the laws of succession of the state of California, all of said trust estate," such trust is a valid one; and the words "wherever and whoever they may be" after the words "heirs at law" have no special significance as indicating an element of futurity, but such combined expression will be held to mean those who are · the heirs of the deceased at the moment of his death.

(1) 40 Cyc., pp. 1386, 1388.   (2) 40 Cyc., pp. 1481, 1482.   (3) 40 Cyc., p. 1459.   (4) 40 Cyc., p. 1481.

APPEAL from a decree of distribution of the Superior Court of the City and County of San Francisco. Frank P. Dunne, Judge. Reversed.

The facts are stated in the opinion of the court.

Sapiro, Levy, Hatfield & Hayes, Leon Samuels and John J. Dailey for Appellants.

Fred L. Dreher and Bacigalupi & Elkus for Respondent.

ST. SURE, J.—Charles J. Newman died testate, leaving surviving as his only heirs at law a widow, a brother, five

3. See 28 R. C. L. 247.

sisters, and a niece. The niece was not mentioned in the will. A stepdaughter was named among the legatees. The Bank of Italy was named as trustee, vested with the usual powers.

An appeal from the decree of distribution in the estate of said decedent brings the will before us for construction. The main question is concerned with the interpretation of a trust created by the will. The provisions in dispute are as follows:

"(B) The said Trustee shall pay all the net income from said trust estate in the following manner: one-half (½) of said income shall be paid by my said Trustee to my wife, Ella Newman, during her lifetime, and upon the death of my said wife, Ella Newman, one-half (½) of said income shall be paid by my said Trustee to Ethel Taylor, of Alameda, California, daughter of my said wife; and the other one-half (½) of said income shall be paid by my said Trustee to my brother, Layo Newman, of the City and County of San Francisco, State of California, and to my sisters, Hattie Vogal, of the City and County of San Francisco; State of California; Julia Barrett, of Detroit, Michigan; Bertie Finn, of Colorado City, Colorado; Mamie Cohen, of Bismar, Michigan; and Fannie Merritt, whose residence is at the present time unknown or to the survivor or survivors of them.

"This trust shall terminate upon the death of the survivor of the persons hereinabove named in Article 'B,' and upon said termination, the said Trustee shall convey, deliver, pay and transfer to my heirs at law, wherever and whoever they may be, according to the laws of succession of the State of California, all of said trust estate."

Respondent agrees with the contention of appellants that the will provides a trust for the disposition of the income of the estate during the lifetime of the beneficiaries named therein, and that upon their death the testator would not particularly care who received his estate, so he directed that the trust should then terminate and the remainder of his property should go to the persons who were his heirs according to the laws of succession of the state of California. None of the parties here concerned desire to strike down the trust.

A reading of the quoted paragraph shows that the trust provides for the distribution of income during the lives of certain persons. At the death of the last survivor the trust is to terminate, and the "trustee shall convey, deliver, pay and transfer to my heirs at law, wherever and whoever they may be, according to the laws of succession of the State of California, all of my said trust estate." Appellants contend that the "heirs at law" so described are the persons who qualify as such under section 1386 of the Civil Code, and that this view is reinforced by the words which follow: "according to the laws of succession of the State of California."

Respondent contends that by the words "heirs at law, *wherever and whoever they may be*, according to the laws of succession of the State of California," the testator meant to describe and refer to the persons who would be his heirs at law at the time of the death of the last survivor of the beneficiaries of the income of the trust set forth in the will. This view of respondent was sustained by the trial court.

The findings of the trial court show that the deceased executed said will about one month prior to his death. He was fifty-one years of age, robust and strong in mind and body, and in excellent health. He died as a result of severe bodily injuries sustained by him in a sudden accident when struck by a street-car. He was married, but without children. His wife had a daughter by a former marriage, Ethel Taylor. His next of kin consisted of one brother, five sisters, and the daughter of a predeceased brother, the latter not named in the will. Four of the sisters had children.

Respondent, for support of its contention, relies in large measure upon the *Estate of Wilson*, 184 Cal. 63 [193 Pac. 581]. [1] In that case it is said that the paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible. (Civ. Code, secs. 1317, 1318.) Statutory rules of interpretation are to be followed in so far as they aid in determining the intention of the testator, but they are all subject to the fundamental rule that the intention *as shown by the will* must prevail. Our statutory rules of interpretation of wills provide that

"the words of a will are to be taken in their ordinary and grammatical sense, *unless a clear intention to use them in another sense* can be collected, and that other can be ascertained," and that "technical words in a will are to be taken in their technical sense, *unless the context clearly indicates a contrary intention,* or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense." The text, as well as the italics are taken from the authority named. As suggested by the respondent, it therefore appears that our problem, and "the sole question before the court, is to determine what the intention of Charles Newman was from the context of the will."

[2] It is a general rule of testamentary construction, so universally recognized as to render unnecessary a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder is given by will, is to be ascertained at the death of the testator. (33 L. R. A. (N. S.), p. 2, note.)

Mr. Justice Holmes says, in *Whall* v. *Converse,* 146 Mass. 345, 348 [15 N. E. 660], that the reasons for the rule that persons to take under an ultimate limitation to testator's heirs at law are those who answer the description at the time of the testator's death are that the words cannot be properly used to designate anybody else, that such a mode of ascertaining the beneficiary implies that the testator has exhausted his specific wishes upon the previous limitations, and is content thereafter to let the law take its course; and perhaps that the law leans toward a construction which vests the interest at the earliest possible moment.

A reference to the statute to point out the persons who are to take tends to show that those who are to take are those living at the death of the person whose estate is to be distributed. (33 L. R. A. (N. S.), note, page 115, and cases cited.)

The law favors the vesting of interests, and every interest will be presumed to be vested unless a contrary intention

clearly is manifest. (*Williams* v. *Williams*, 73 Cal. 99 [14 Pac. 394]; *In re DeVries*, 17 Cal. App. 184 [119 Pac. 109]; *Estate of Washburn*, 11 Cal. App. 735 [106 Pac. 415]; Civ. Code, sec. 1341.)

Another reason assigned is the bias of the courts in favor of heirs or next of kin, as against third persons.

To take a case out of the general rule there must be some special circumstances tending to show that the testator did not intend that the next of kin who were to take should be looked for at his death, but at some other period.

Respondent trustee bases its contention for an artificial interpretation of the words "heirs at law" upon the use of the expression "wherever and whoever they may be" in association therewith. In this connection it should also be borne in mind that the additional words "according to the laws of succession of the State of California," immediately follow and complete the phrase. It is undisputed that the will was drawn by an attorney at law. It would therefore seem that the language of sections 1324, 1327, and 1334 of the Civil Code should have an important bearing upon the matter of construction. [3] The word "heirs" is a technical term, and in its "technical sense" one's "heirs" means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statute relative to succession. (*Estate of Watts*, 179 Cal. 20, 22 [175 Pac. 415].)

[4] We cannot see that special significance should attach to the phrase "wherever and whoever they may be." Charles Newman was in the prime of a vigorous manhood when he made his will, and was not expecting an early and sudden passing. His was not a deathbed will. The phrase used was a rational one such as might be used by a person who had before him the reasonable expectancy of life that testator had when he made his will. The language of the will, it seems to us, indicates that testator created a trust of his estate for the period of certain lives in being; that he wished to keep the *corpus* of the property intact, and insure the payment of the income to the beneficiaries (naturally the objects of his bounty) during their lives; and that while he may have wished to postpone the distribution of the *corpus* of his estate, "beyond that," as respondent con-

cedes, he was not really concerned and "did not care who received the remainder except that he wanted his legal heirs to receive the same."

We have heretofore mentioned that respondent strongly relies upon the *Estate of Wilson, supra,* for support of its contention. Ellen Wilson, testator, was a widow. Her sole heir was her son, Thaddeus McConnell. The will gave Thaddeus all the personal estate. The real property was devised to her son for life, and at his death to his then living children. If he should leave no issue, then the property was to be distributed at Thaddeus' death "among my heirs as provided by the laws of the state of California, the same as if I had died intestate." The will further provided that if Thaddeus should die before the testatrix, leaving issue, the estate should go to such issue; if Thaddeus should predecease his mother and leave no issue, then the estate was to go "to my heirs, the whole to be distributed among them according to California law of succession in cases of intestacy." The first contingency came to pass. Thaddeus survived Mrs. Wilson, but died without issue. Thereafter the estate became ready for distribution and the question arose as to the interpretation of the words, "among my heirs as provided by the laws of the state of California, the same as if I had died intestate." The supreme court declares the rules of construction we have hereinbefore repeated, and then says: "To our minds it seems perfectly clear from the will, in the light of those circumstances we are entitled to consider, that the testatrix could not have intended her son to constitute or be included within the 'my heirs' 'among whom' the real property was to be distributed upon the death of the son without issue surviving. It is true that it has often been held that there is no legal inconsistency in an heir who has been made a life tenant by the will being included among the 'heirs' to whom the remainder is given. If there was nothing in the will here involved to show that others than the son were intended by the designation 'my heirs,' it might well be claimed that the courts must accept the term in its technical meaning as including those only who, at the moment of the death of the testatrix, constituted her heirs at law, viz., her son. (See *Estate of Watts, supra.*) But the very language upon which respondent must

rely, viz.: 'then upon his (her son's) death, all such real property shall be distributed *among my heirs* as provided by the laws of the state of California, the same as if I had died intestate,' is opposed to the theory of any such intention. It is self-evident that while the son, who was in the strict technical sense the sole heir apparent of this widow of sixty years of age, was an heir, could not be 'heirs'; nor could the real property be distributed 'among' him, the term 'distributed among' necessarily referring 'to a gift to more than two' heirs." For these and other reasons the supreme court concluded that the case is one where the context clearly indicates (Civ. Code, sec. 1327) that the word "heirs" was not used in the strict technical sense. But there is no such language contained in the will of Charles Newman. The language of the Wilson will was such that it clearly indicated to the learned author of the opinion in that case that there was something in the testamentary document to show that others than the son were intended by the designation "my heirs," otherwise "the courts must accept the term in its technical meaning as including only those who, at the moment of the death of the testatrix, constituted her heirs at law."

We are urged to hold that because there may be an element of futurity in the phrase "wherever and whoever they may be," it was the testator's clear intention to describe the members of an artificial class to be ascertained at the time of the death of the last survivor of the beneficiaries of the income, upon the assumption that the testator shall die at that precise moment. Respondent argues that "the great weight of authority holds that this language does indicate an intent to depart from the usual meaning of the word 'heirs.' " But we find the great weight of authority to the contrary.

The *Estate of Washburn*, 11 Cal. App. 735 [106 Pac. 415], is cited. Respondent quotes from the opinion language which says that if a contingent interest is clearly intended it will be enforced as such. The principle is not questioned. The Washburn case is different from the instant case. The Washburn trust devised the remainder of the estate "upon the termination of the trust to the *then* living children of the married daughter."

Respondent also cites the case of *Hall* v. *Wright*, 17 Cal. App. 502 [120 Pac. 429], in which the court had before it for interpretation a deed made to a mother for life "and then to the heirs of her body begotten forever." The court called attention to *County of Los Angeles* v. *Winans*, 13 Cal. App. 234 [109 Pac. 640], which it said was decisive of the controversy. In the opinion in that case it was held that "when property in this state is conveyed to a mother for life, with remainder to the heirs of her body, those interested in the remainder take by purchase and not by inheritance. Such remainder is a contingent interest, future in character, and the person to whom, and the time of the happening upon which, it is limited to take effect, were both uncertain at the time of the creation. Since the uncertainties at the time of the creation of the contingent remainder continue to exist until the death of the life tenant, it did not and could not vest until her death, because she could have no 'heirs of her body' prior to her decease." This is in line with appellants' argument that "no one is the heir of a living person"; that there is necessarily a great element of uncertainty in the mind of one who prepares his will at a time when he has no reason to expect a speedy demise; that there is as much uncertainty concerning the identity of his heirs as there is concerning the length of time the testator has to live; that this was particularly true in Newman's case because of his superior health and expectancy of life. At the conclusion of the opinion in *Hall* v. *Wright*, at page 507 of 17 Cal. App. [120 Pac. 431], the court pertinently observed: "It may be remarked that the word *'then'* clearly refers to the time of the expiration of the life estate. The language would be equivalent if it were 'for the natural life of the said party of the second part and afterward to the heirs of her body begotten forever.'"

Respondent also directs our attention to the case of *In re Winter*, 114 Cal. 186, at page 187 [45 Pac. 1063, 1064], where the court interpreted the meaning of the words "between my surviving brothers and sisters." The will in that case contained the following paragraph:

"Thirdly. I will and bequeath to my wife Annie Winter, all of my estate that I die possessed of, except the ranch I am living on, on Union Island, San Joaquin county, Cali-

fornia, which I will and bequeath to my wife Annie Winter for the remainder of her life; then it is to be sold and the proceeds to be divided between my surviving brothers and sisters.''

As appears, the property was devised to the testator's wife., The will provided that upon her death: *"Then* it is to be sold and the proceeds to be divided between my surviving brothers and sisters.'' The court held that the testator intended the proceeds to be divided among ''the brothers and sisters *then surviving.''* (114 Cal. 187 [45 Pac. 1064. Italics quoted.)

Neither of the words ''then'' or ''surviving'' is present in the Newman will. Here the respondent trustee is not directed to convey to ''my *then surviving* heirs at law,'' or even to ''my *surviving* heirs at law.''

In both cases, *Hall* v. *Wright* and *In re Winter, supra,* it is apparent that the word *"then"* is used in an adverbial sense, and so used was regarded by the appellate tribunals as of impelling importance. Mere words of futurity without the adverb of time are insufficient to preclude the application of the general rule. (*Mortimer* v. *Slater,* L. R. 7 Ch. Div. 322.) Words expressive of future time are to be referred to the vesting in possession if they reasonably can be, rather than to the vesting in right. (*In re Kenyon et al.,* 17 R. I. 149 [20 Atl. 294, 296].)

The case of *In re Cooper's Will,* 109 App. Div. 566 [96 N. Y. Supp. 562], cited by respondent, supports its contention. The court construed the meaning of the words ''whomsoever they may be,'' and said: ''Here is a specific direction to convey on the expiration of a trust term an estate to those then entitled to take, or, as the testator says in his own words, 'whomsoever they may be.' Words of futurity are annexed to the gift, and it is plain, we think, that the testator did not intend that there should be ascertainment of the persons who would take ultimately until after the death of the life beneficiary, and the expiration of the trust for her benefit. Then the *corpus* was to be transferred to those who would be heirs at law or next of kin 'whomsoever they may be,' not 'whomsoever they now are.' '' No authority is cited, no analysis of the phrase is made, and the interpretation is purely arbitrary and without gram-

matical sense or reason.   A man does not have heirs during his lifetime.   He does not speak of his heirs in the present tense.   He always speaks of his heirs as a class to be determined in the future.

The decision in the Cooper case does not state the rule of construction established by the court of last resort in New York.   It is a decision of a lower court and is contrary to the rule announced by the court of appeals of that state in *In re Bump's Will* (1922), 234 N. Y. 60 [136 N. E. 295]. In the latter case it appeared that the testator had given his property to his wife for life, with the remainder to his daughter in fee, if living, or to her issue if dead.   If the daughter should die before the wife without issue, then he gave the income to his sisters or to the survivors of them for life, and added the clause: "Subject to the foregoing provisions, I give, devise and bequeath the *corpus* of my estate, or what is left of it after the death of my wife, to such persons as would be entitled to the same as my heirs under the intestacy laws of the State of New York absolutely."

When the testator executed the will he had a wife, a daughter, two sisters, two aunts, and a number of cousins. One of these sisters predeceased him.   The other relatives survived him.   The daughter died before the widow, unmarried.   The question arose after the death of the widow.

The court of appeals held that the word "heirs" must be interpreted in its natural sense unless an intention to use the word in a different sense is clearly manifested in the will; that words of futurity do not indicate any such intent. The court said: "Nor do we attach importance to the phrase 'such persons as would be entitled . . . as my heirs.'   While speaking as of the death of the testator, the will was prepared some years before.   When writing it, he refers to the future—'as would be my heirs at the time of my death,' or 'as would be my heirs at the termination of the life estate.' One intent is as likely as the other."

Numerous cases from other jurisdictions are cited and quoted from by respondent.   It may be said as to all of them that none disputes the paramount rule that the ultimate question is the intention of the testator as expressed in the will.   The real question discussed in all of them is: What did the testator mean in view of the language he has

used in his will, in the light afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will? Such is the question here involved. Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills. (*Estate of Wilson, supra; Estate of Henderson,* 161 Cal. 353, 357 [119 Pac. 496, 498]. See, also, *Rosenberg* v. *Frank,* 58 Cal. 387; *LeBreton* v. *Cook,* 107 Cal. 410, 416 [40 Pac. 552].) A review of such cases would therefore be futile.

Guided by the statutory and general rules of construction preliminarily adduced herein, with a copy of the will of Charles Newman before us, and after a careful consideration of its context, we believe that we would not be justified in holding that the language of that document shows a clear intention on the part of the testator to deviate from the laws of inheritance of California. Unless the will affords clear and unequivocal evidence to the contrary, all doubts will be resolved in favor of the heirs at law at the time of testator's death. (*In re Swann's Estate, Appeal of Bell,* 147 Pa. 383 [23 Atl. 599, 600].) Adoption by us of the interpretation urged by respondent would amount to pure conjecture on our part. Having in mind the particular words and phrasing of the will so oft quoted herein, also the context,  likewise the meager circumstances of its execution, it is impossible for us to clearly gather testator's intention any further than is manifest, viz., the creation of a trust for the disposition of the income of the estate during the lifetime of certain named beneficiaries. Beyond that we can merely guess at his intention. This being so, we must be governed by paramount rules of law in arriving at what we believe is a proper solution of the problem. We are of the opinion that the trust is a valid one and should be enforced; and that the words "heirs at law wherever and whoever they may be according to the laws of succession of the State of California" mean those who are the heirs of Charles Newman at the moment of his death.

Because of the views herein expressed we deem it unnecessary to consider other points made by appellants.

The decree of distribution is reversed.

Knight, J., and Tyler, P. J., concurred.