[L. A. No. 17279.   In Bank.—January 7, 1941.]

In the Matter of the Estate of PHILIP E. LAWRENCE, Deceased.

CHURCH HOME FOR CHILDREN OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF LOS ANGELES, Appellant, v. CHARLES LAWRENCE et al., Respondents.

(1)

Waldo & Waldo, O'Melveny & Myers, Louis W. Myers and George E. Waldo for Appellant.

Thomas W. Cochran and E. D. Yeomans for Respondents.

CARTER, J.—This appeal is taken from a decree of the Superior Court of Los Angeles County sitting in probate, directing distribution of the estate of Philip E. Lawrence to his heirs at law.

The testator, a single man, died July 1, 1938, at the age of 80 years, leaving as his nearest relatives nephews, nieces, grandnephews and grandnieces. He left a will, executed more than six months prior to his death, which was admitted to probate without question as to its validity.

Said will provided for payment of his debts and funeral expenses out of the property left by him at the time of his death, then disposed of his entire estate in the following terms:

"Third: I direct that all the residue and remainder of money and property left by me at the time of my death (after payment of all my just debts and funeral expenses), shall be, by my executors used to purchase or contract for an annuity in favor of and payable to my friend Walter C. Black, now residing at 200 West Ave. 33rd, Los Angeles, California, during the remainder of his life. I recommend that such annuity be purchased from the Equitable Assurance Company of New York but if in the judgment of my executors it is unwise at the time such annuity is purchased to so deal with said company, my executors are to use their judgment in that event as to where they will purchase such annuity. I further recommend that such annuity contract shall be one that will provide for repayment to my executors of the principal unused in the payment of annuities in event of the death of the said Walter C. Black before all of the money thus used in purchasing annuity has been consumed under such contract.

"Fourth: In event that refund of principal, as provided in the Third paragraph hereof, is made I give, devise and bequeath of such moneys so refunded, to the Church Home for the children of the Protestant Episcopal Church of the Diocese of Los Angeles, now located at 940 North Avenue 64th, Los Angeles, California and to David and Margaret Home, now located at La Verne, California, in equal parts, share and share alike."

The annuitant Black, a man 39 years of age, lived in the home of the testator. On June 30, 1938, he struck the testator on the head with a hammer, then shot himself, dying almost instantly. The testator never regained consciousness and died the following day.

During the course of administration certain of the heirs at law petitioned the superior court sitting in probate for a

distribution of the entire estate to them, whereupon the two charitable institutions named in the will appeared in opposition to said petition and sought distribution of the estate to themselves, each claiming one-half thereof. When said petition of the heirs, the objections thereto, and the final account and petition for distribution "to persons entitled thereto" filed by the executors came on for hearing in April, 1939, the superior court made its order and decree that neither of the charitable institutions was entitled to any part of the estate, and directed distribution of the whole estate, with the exception of certain sums set aside for payment of inheritance taxes and other legal obligations to the heirs at law of the testator.

Both charitable institutions appealed from said order and decree which was entered on April 25, 1939. After said appeals had been perfected, the David and Margaret Home for Children, Inc., on August 8, 1939, entered into a compromise and settlement agreement with the heirs, by the terms of which it was agreed that the sum of $4,500 should be paid out of the assets of the estate to this one appellant, and in consideration thereof said appellant assigned to the heirs the balance of the estate and agreed to dismiss its appeal. Thereafter, said appellant David and Margaret Home for Children, Inc., made a motion in the District Court of Appeal for dismissal of its appeal and for an order directing the lower court to enter a judgment for partial distribution in accordance with a stipulation signed by appellant and the heirs pursuant to the compromise and settlement agreement of August 8th. Said motion was granted by the District Court of Appeal and *remittitur* therein issued on December 30, 1939. (*Estate of Lawrence,* 36 Cal. App. (2d) 377 [97 Pac. (2d) 850].) As a result of this proceeding the David and Margaret Home for Children, Inc., has been eliminated as a party to this appeal.

The judgment of the trial court herein appealed from upheld the contention of the heirs that the bequest to Black lapsed because he predeceased the testator; that the remainder over to the two charities was contingent; and that said remainder was destroyed by failure of the intervening life estate—with total intestacy resulting.

The appellant Church Home for Children of the Protestant Episcopal Church in the Diocese of Los Angeles claims that

paragraph 4 of the will provides for a residuary legatee; that the legacy to Black under paragraph 3 of the will constitutes a limited interest, i. e., a life estate in an annuity; and that the death of the legatee of a limited interest before the testator's death does not defeat the interest of the remainderman who survives the testator (Prob. Code, sec. 140); also, that the gift to the charities was not a contingent remainder but vested upon the death of the testator.

In the construction of wills the paramount rule, to which all others must yield, is that a will is to be construed according to the intention of the testator, as expressed therein, and this intention must be given effect as far as possible. (*Estate of Wilson,* 184 Cal. 63, 66, 67 [193 Pac. 581]; *Estate of Newman,* 68 Cal. App. 420, 423 [229 Pac. 898]; *Estate of McCurdy,* 197 Cal. 276, 282 [240 Pac. 498]; *Estate of Phelps,* 182 Cal. 752, 756 [190 Pac. 17]; *Estate of Ritzman,* 186 Cal. 567, 568, 569 [199 Pac. 783].)

Of course, as stated in the case of *Estate of Wilson, supra,* at page 68: "Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills."

The heirs in this case contend that it is obvious that the primary thought of the testator herein was to provide for his friend Black; that the provision as to the charities was secondary and subordinate thereto; and that said provision naming the charities was only a contingent remainder, based on the following contingencies: (1) That Black survive the testator; (2) that a refund type of annuity be purchased; and (3) that there be a remainder of such principal from this specific annuity left upon the death of Black. They further contend that the testator did not intend the charities to have his entire estate, but only the unspent remnant remaining at the end of the life of Black, which under the normal life expectancy of Black would be nothing.

Examining the will before us, we are of the opinion that the general intent of the testator, as expressed therein, was to provide for Black during his life, and that thereafter any of the estate remaining was to go to the two named charities.

In this interpretation we are aided by the rule that constructions which lead to intestacy, total or partial, are not favored; and that such interpretation should, if possible, be placed upon the provisions of the will as will prevent intestacy, especially where the will evinces an intention on the part of the testator to dispose of his whole estate. (*Estate of Gregory,* 12 Cal. App. 309, 312 [107 Pac. 566]; *Le Breton* v. *Cook,* 107 Cal. 410, 416 [40 Pac. 552]; *Estate of Granniss,* 142 Cal. 1, 7 [75 Pac. 324]; *Estate of Phelps, supra; Estate of McCurdy, supra.*) It is clear also in the instant case that the testator intended to and did dispose of his entire estate entirely without provision for his heirs.

The heirs maintain that the testator used mere precatory words—"I further recommend"—when discussing the type of annuity which should be purchased; and that therefore, the charities had no enforceable right, but a mere contingent expectancy which would be completely destroyed if the executors should, in the exercise of their discretion, purchase a straight life annuity which would give Black the maximum annual income, but provide for no refund in the event of Black's death prior to the consumption of the principal.

The rule seems to be well settled to the contrary. It has been stated frequently that when words of recommendation, request and the like are used in direct reference to the estate, they are *prima facie* testamentary and imperative, and not precatory. While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor. All expressions indicative of his wish or will are commands. (*Estate of Tooley,* 170 Cal. 164, 166, 167 [149 Pac. 574, Ann. Cas. 1917B, 516]; *Estate of Pforr,* 144 Cal. 121, 128 [77 Pac. 825]; *Estate of Marti,* 132 Cal. 666, 671 [61 Pac. 964, 64 Pac. 1071]; *Estate of Mayne,* 28 Cal. App. (2d) 340, 343 [82 Pac. (2d) 504].)

We likewise cannot agree with the heirs' contention that Black was the residuary legatee, whose death destroyed any remainder which might have gone to the charities. From a careful analysis of paragraph 3 of the will, we are forced to conclude that the testator did not devise and bequeath to Black all the residue and remainder of his property. Instead, he directed that the whole of his estate which was the

residue and remainder of his money and property after the payment of debts and funeral expenses, be used by his executors to purchase an annuity payable to Black during his life, which contract should specifically provide for a refund, if any, of the principal remaining unused at Black's death, and that such remaining principal, which actually was the residue of his entire estate, be paid to the two charities named by him.

No particular mode of expression is necessary to constitute a residuary legatee. It is sufficient if the intention be plainly expressed in the will that the surplus of the estate, after payment of debts and legacies, shall be taken by a person there designated. (*Estate of Fritze*, 85 Cal. App. 500, 505 [259 Pac. 992]; *Estate of Upham*, 127 Cal. 90, 98 [59 Pac. 315].)

In our opinion none of the three contingencies set forth by the heirs must occur in order to permit the vesting of the interest of the charities. It is provided in Probate Code, section 140, that: "The death of a devisee or legatee of a *limited interest* before the testator's death does not defeat the interest of persons in remainder who survive the testator." Therefore the fact that Black, the legatee of the limited interest, predeceased the testator does not defeat the interest of the charities.

Since we have determined that it was the mandatory duty of the executors to purchase a refund type of annuity, the fact that they might refuse to perform their duty does not create a contingency. Otherwise every bequest would be contingent, for the reason that the executor might refuse to do what was required to effectuate it.

That there might be no principal remaining from this specific annuity upon Black's death likewise would not defeat the interest of the charities, because the law is clear to the effect that the circumstance that all of the *corpus may* be consumed in providing for the life tenant does *not* make the remainder a contingent one. (*Estate of Ritzman, supra; Estate of Phelps, supra; Estate of Rider,* 199 Cal. 724 [251 Pac. 799]; *Estate of Gregory, supra; Estate of Mayne, supra.*) It is not the uncertainty of *actual* enjoyment, but the uncertainty of the *right* to enjoyment that renders a remainder contingent. (*In re De Vries,* 17 Cal. App. 184, 185, 189 [119 Pac. 109];

*County of Los Angeles* v. *Winans,* 13 Cal. App. 234, 243 [109 Pac. 640].)

For the foregoing reasons and because the law favors the vesting of estates (*Estate of Rider, supra*), it is our conclusion that upon the death of the testator, the right of Black to the annuity bequeathed to him by the will having lapsed as the result of his death prior to the death of the testator, the residue of the estate thereupon vested in the charities as residuary legatees named in the will to whom the residue was to be distributed upon the death of Black.

A case so nearly *on all fours* with the present case as to bear mention is that of *Estate of Gregory,* 12 Cal. App. 309 [107 Pac. 566]. The testator, in the fifth paragraph of his will, bequeathed the residue of his estate in trust to be converted into cash and invested and reinvested so as to provide an income to be paid to his wife for life at the rate of $30 per month, "together with such *additional sum or sums,* from time to time during her life as said trustee or his successor may from time to time determine that her circumstances require, said payments to be made *from the principal* of said fund, and upon the death of my said wife, to immediately pay over and deliver all of *said trust fund and residue* of my estate then remaining" to his grandchildren, to whom—"I hereby give, devise and bequeath all of said *residue of said trust fund* in equal share." The wife predeceased the testator and the trust never came into existence because of the predecease of the beneficiary. It was contended there, as it is here, that the remainder to the grandchildren was destroyed by the lapsing of the intervening estate and the failure of the trust; that there was no provision in the will for the disposition of the residue of the estate except the one attempted to be set out in the aforesaid trust clause, which was for the residue not of the estate but of the trust fund; that by reason thereof the deceased died intestate as to the residue of his estate.

The court, at page 311, therein said:

"The residue of the testator's estate consists entirely of personal property, and appellant contends that sections 769 and 1344 of the Civil Code deal with real or immovable property exclusively, and that therefore the grandchildren did not, upon the death of the testator, have a vested remainder in the residue of his estate. Yet, on the other hand, to sup-

port her position that the provisions of the trust are void, she calls our attention to a number of cases, in each of which the trust concerned real property, and was either to convey, or suspended the power of alienation for an unlawful period, and was therefore invalid. Neither the sections of the Civil Code cited, nor the cases referred to are in point. The property involved here is personal property, which is subject to no statutory restriction (*Estate of Wakerly* [*Walkerly*], 108 Cal. [627], 656 [49 Am. St. Rep. 97, 41 Pac. 772]), and the trust created by the will was not unlawful nor invalid. It merely, by reason of the death of the beneficiary before the will took effect, became inoperative and failed. The real question in the case is, Did the testator intend to dispose of the whole of his estate, and is his will susceptible to such construction? We think so, and that it is plain from the provisions of the fifth paragraph of his will above quoted that the testator constituted the residue of his estate into a trust fund, and provided that upon the death of his wife whatever was left of this trust fund should go to the two grandchildren named. The fact that the wife never lived to become the beneficiary of the trust created in her favor is no reason for holding that the subsequent provision of the will directing the disposition of the fund should be defeated. 'In the interpretation of wills, constructions which lead to intestacy, total or partial, are not favored; and such an interpretation should, if possible, be placed upon the provisions of the will as will prevent intestacy, especially where the will evinces an intention on the part of the testator to dispose of his whole estate.' (*Le Breton* v. *Cook*, 107 Cal. 410 [40 Pac. 552]; *Estate of Granniss*, 142 Cal. 1 [75 Pac. 324]; *Estate of Lux*, 149 Cal. 205 [85 Pac. 147].)

"In paragraph fifth of the will, as we have seen, the testator gave, devised and bequeathed all the rest, residue and remainder of his estate to the trustee in trust for the benefit of his wife, and the residue of that fund, which would be the residue of the estate, he directed to be delivered and paid over to his two grandchildren in equal shares, and in the same paragraph he directed that all the trust fund and the residue of his estate be paid over and delivered to his said grandchildren. The testator's wife having died before him, she never became entitled to the trust fund. The provision as to her lapsed, but as there were residuary legatees

designated in the will, the property out of which the trust fund was to be constituted must go to them, and not descend to the heirs.''

In said case the testator directed that the entire residue of the estate be formed into a trust fund, and provided that the residue of said fund which was the residue of his estate should be paid to his grandchildren, after a life income therefrom and so much of the principal as she needed should have been paid to the wife. It seems to us that in substance there is very little difference between a direction that a trust fund for the purpose of providing income be formed and a direction that an annuity for the same purpose be purchased. In the *Estate of Gregory, supra,* it might have been necessary to exhaust the entire *corpus* of the trust in order to provide for the beneficiary's needs. In the present case Black might have lived long enough to have consumed the entire annuity. Similarly, also, the entire residue of the testator's estate was to be used to purchase said annuity, and, in like manner, the provision that the remaining portion, if any thereof—''I give, devise and bequeath'' to the named charities—was in effect a devise of the residue of the entire estate. It follows that, as in the *Estate of Gregory, supra,* the fact that Black never lived to become the beneficiary of the annuity to be purchased in his favor, and that said annuity would therefore not be purchased, does not prevent the property out of which such annuity was to have been purchased from vesting in the charities in accordance with the intention of the testator as expressed in the will.

In our opinion it was the intention of the testator, as indicated by the provisions of his will hereinabove quoted, that the charities were to succeed to any unused portion of his estate not consumed in providing the life annuity in favor of Black. This brings the case clearly within the provisions of section 92 of the Probate Code, which reads: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, *unless an intention appears to substitute another in his place; . . .* '' We cannot read the above quoted provisions of the will without arriving at a very definite conclusion that it was the intention of the testator to substitute the charities in the place and stead of Black should the latter die before all or any part of the tes-

tator's estate was consumed in providing the annuity for Black.

■ Although it has been held that where a will is capable of two interpretations, under one of which those of the blood of the testator will take, while under the other the property will go to strangers, the interpretation by which the property goes to those of the blood is preferred (*Estate of Boyd,* 24 Cal. App. (2d) 287, 289 [74 Pac. (2d) 1049]; *Estate of Hartson,* 218 Cal. 536, 540 [24 Pac. (2d) 171]; *Estate of Wilson,* 65 Cal. App. 680, 689 [225 Pac. 283]), nevertheless, the said rule does not apply where in order to prefer those of the blood of the testator, it is necessary to ignore the presumption against intestacy and in favor of upholding the intent of the testator as expressed in his will.

■ The heirs advance the argument that the survival of Black and the purchase of the annuity are conditions precedent to the bequest to the charities. This contention was completely refuted by the appellant's answer, that the purchase of a refund annuity was purely a matter of procedure, incidental to the substance of the testator's intent, which was to provide first for Black and second for the charities. It points out that section 142 of the Probate Code reads as follows:

"A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect. *It is to be deemed performed when the testator's intention has been substantially, though not literally, complied with.* Nothing vests until such condition is fulfilled, except *where fulfillment is impossible,* in which case *the disposition vests,* unless the condition was the sole motive thereof *and* the impossibility was unknown to the testator or arose from an unavoidable event subsequent to the execution of the will." (Italics ours.)

Assuming, however, that the heirs were correct in their contention as to the presence of conditions precedent, appellant contends that the testator's intention to provide a life income for Black was *substantially though not literally* complied with, because Black did not live for any period of time after testator's death, without receiving such income. Further assuming that these conditions precedent were unfulfilled, the charities submit that *fulfillment was then impossible,* because the executors could not purchase an annuity for a man

already dead. In such case as this then, according to the code, the disposition vests, because although the impossibility was unknown to the testator—and arose from an unavoidable event subsequent to the execution of the will, the condition was not the *sole motive* thereof. In our opinion the arguments of the heirs are thus completely answered.

Since on this appeal we are concerned only with the rights of the Church Home for Children of the Protestant Episcopal Church in the Diocese of Los Angeles, the decree appealed from is, as to the claim of said appellant, hereby reversed with directions to the trial court to distribute to said claimant one-half of the estate of said deceased.

The appeal from the order denying motion for new trial is dismissed.

Shenk, J., Spence, J., *pro tem.,* Edmonds, J., and Gibson, C. J., concurred.