[Civ. No. 19219.   Second Dist., Div. One.   Aug. 10, 1953.]

Estate of ANNA C. RUTAN, Deceased.   FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES, as Trustee, etc., Petitioner and Appellant, v. THE UNITED STATES NATIONAL BANK OF DENVER, as Executor, etc., et al., Contestants and Appellants; EMILY CLARKE RUTAN, Respondent.

Chandler P. Ward for Petitioner and Appellant.

Larwill & Wolfe, Thomas A. Wood, Stevens Weller, Jr., Gibson, Dunn & Crutcher, E. H. Conley and Robert F. Schwarz for Contestants and Appellants.

Combs & Hoose, Lee Combs, Thomas J. Kelley and Harned Pettus Hoose for Respondent.

DRAPEAU, J.—Anna C. Rutan, a widow, executed her last will on August 26, 1937. After her death on July 24, 1941, it was duly admitted to probate and its terms were incorporated in decrees of distribution entered on April 20, 1942, and July 27, 1943, respectively.

The dispositive provisions of the will may be summarized as follows:

By article second, testatrix gave her clothing, jewelry, personal effects and real estate "to my granddaughter Donna Rutan."

By article third, she gave her residuary estate to Farmers and Merchants National Bank of Los Angeles in trust, conditioned as follows:

594

(a) To pay the entire net income in monthly installments "to my granddaughter Donna Rutan." If the income be insufficient to pay $200 per month, to invade the corpus for that purpose, but in that event to deduct the advancement of corpus from the bequest of $5,000 under paragraph (b).

(b) Two years after testatrix' death to pay "to my granddaughter Donna Rutan" $1,000 from corpus. Ten years thereafter to pay to said Donna $5,000. These bequests to lapse in the event of distribution of the trust estate "under the terms as hereinafter provided prior to the date upon which either or both of these bequests shall become due."

(c) "Upon my granddaughter Donna Rutan reaching the age of fifty (50) years, I direct my Trustee herein named to distribute all of the corpus of my trust estate then remaining in its hands, to her."

(d) "Should my granddaughter Donna Rutan predecease me or die before reaching the age of fifty . . . to pay the net income of my trust estate to her children living at the time of my demise. Upon the youngest of said children reaching the age of twenty-one years, I direct my Trustee to distribute the corpus of my trust estate then existent, share and share alike, to said children."

(e) ". . . Should my granddaughter Donna Rutan predecease me or die during the existence of this trust, leaving no children, I direct that my Trustee continue to administer my trust estate for the time and in the manner as follows:

(1) To distribute two-thirds of the income monthly for the remainder of her life to Emily Clarke Rutan.

(2) To distribute one-third of the income monthly to C. A. Rutan during his natural life.

(3) Upon the demise of Emily Rutan, "to distribute two-thirds of the corpus of my trust estate to my heirs-at-law, in the manner and amounts, as provided by the laws of the State of California."

(4) "Upon the demise of the survivor of the remaining two beneficiaries under this paragraph of my will, to distribute the remainder of the corpus of my trust estate to my heirs-at-law" in the same manner.

(5) "Should any of the beneficiaries named in this paragraph of my will predecease me or be deceased at the time when this paragraph of my will would become operative for their benefit were they living, I direct that portion of the corpus of my trust estate, the income on which would have

gone to them were they living, be distributed to my heirs-at-law'' in like manner.

(i) ''The duration of this trust shall in no event nor by any possibility, extend beyond the death of the last surviving of the following persons: Donna Rutan, Emily Clarke Rutan, C. A. Rutan, and the children of Donna Rutan, living at the time of my demise.''

The trust was declared to be one for maintenance; spendthrift and disinheritance clauses were included, as well as other provisions not material at this point.

A stipulation of facts discloses that testatrix, a widow, died July 24, 1941; that her only child, Roscoe C. Rutan, predeceased her; that said son was married to Emily Clarke Rutan, and that Donna Rutan was their sole issue.

When testatrix died, her nearest surviving relatives were:

| | |
|---|---|
| Donna Rutan | Granddaughter |
| Dr. William Thomas Chambers | Brother |
| Anna Kepner Mertz | Maternal first cousin |
| Edith Kepner Mathis | Maternal first cousin. |

Mr. C. A. Rutan, one of the beneficiaries of the trust, and the brother-in-law of testatrix, died in April, 1942.

Dr. Chambers, brother of testatrix, died March 29, 1949, without issue, and the United States National Bank of Denver is executor of his estate.

Donna Rutan died January 5, 1951, during the existence of the trust and prior to attaining the age of 50 years, unmarried and without issue.

Anna Kepner Mertz died January 18, 1951, and George J. Arblaster is administrator of her estate.

Edith Kepner Mathis died during the pendency of this appeal, i.e., October 3, 1952, and Ben H. Brown, Public Administrator, as administrator of her estate, has been substituted in her place.

Emily Clarke Rutan, the mother of Donna, is the sole heir-at-law and next of kin of Donna Rutan, and is the duly appointed administratrix of Donna's estate.

It was stipulated in open court that Donna Rutan was 37 years of age when she died.

On July 26, 1951, Farmers and Merchants National Bank, as testamentary trustee, filed a petition for instructions regarding administration of the trust.

The questions there posed with respect to distribution of income and corpus of the trust estate, among others, required

an interpretation of the words used in the will and the decrees of distribution: "to my heirs-at-law in the manner and amounts as provided by the laws of the State of California." Specifically, whether those words "in the light of other provisions of said will and decree(s) of distribution," referred to Donna Rutan (who was the sole heir at law of testatrix at the latter's death), or referred to persons who were heirs at law of testatrix at the time of the death of Donna Rutan.

The family tree, which forms part of the record on appeal, reveals that when Anna C. Rutan died, Donna Rutan, her granddaughter, was her sole heir at law. When Donna died, Anna's sole heirs were her maternal first cousins Mertz and Mathis, now deceased.

Among other things, the trial court found:

"VI. That it is true that the testamentary trust wholly terminated upon the death of Donna Rutan on January 5, 1951.

"VII. That it is true that Donna Rutan was the sole heir at law of the decedent herein who died July 24, 1941, and that C. A. Rutan having died in April, 1942, before the Testamentary Trust became operative for his benefit and upon the death of Donna Rutan as herein found, the entire trust estate became on January 5, 1951, and now is, distributable to Emily Clarke Rutan, as Administratrix of the Estate of Donna Rutan, deceased, under and pursuant to the intent expressed and manifest in the Last Will and Testament of Anna C. Rutan.

"VIII. That it is true that Testatrix when she used the words heirs at law in her will, used and intended to use the same in the ordinary and legal meaning and referred to her heirs at law living at the time of her demise; that it is true that the only heir at law of Anna C. Rutan living at the time of her demise was Donna Rutan; that it is true that Donna Rutan died leaving no children and having as her sole heir at law her mother, Emily Clarke Rutan."

From the order which followed, the testamentary trustee, the executor of the estate of William Thomas Chambers, deceased, and the administrators of the estates of Anna Kepner Mertz and Edith Kepner Mathis have appealed.

The order appealed from reads in part as follows:

"The Trustee is instructed, and it is hereby determined that the testatrix in using the words 'heirs-at-law' in her last will and testament, including Paragraph (e)(5) of said will, intended to refer and did refer solely to the heirs-at-law of Anna C. Rutan living at the time of her demise; that the only

heir-at-law of Anna C. Rutan living at the time of her demise was Donna Rutan; that said Donna Rutan having died without issue, and C. A. Rutan having previously died, Emily Clarke Rutan, as administratrix of the estate of Donna Rutan, deceased, is entitled to ⅓rd of the corpus and of undistributed income under Paragraph (e) (5) of said will; that upon the death of Donna Rutan without issue, following the death of C. A. Rutan, followed by distribution of ⅓rd of the corpus and undistributed income of said trust, as hereinabove specified, the purposes for which said trust was created as to the remaining ⅔rds thereof ceased to exist and the same terminated as to said remaining ⅔rds of corpus and undistributed income and Emily Clarke Rutan, as administratrix of the estate of Donna Rutan is entitled to receive such ⅔rds; that the Trustee forthwith prepare and file its Final Account and Petition for Distribution accordingly.''

In support of the order, respondent urges that in the absence of a clear and unqualified expression to the contrary, the testatrix meant by the words ''my heirs at law'' those persons who met that qualification at her death, citing *Estate of Newman,* 68 Cal.App. 420 [229 P. 898].

Appellant executor of the brother's estate agrees with respondent that by the use of the words ''my heirs at law,'' testatrix meant her heirs as determined at date of her death. But it argues that the express terms of the will clearly manifest an intention to exclude Donna Rutan from the general class of testatrix' heirs at law; and likewise clearly create conditions precedent to Donna Rutan's taking any part of the remainder trust corpus.

Appellant administrators of the two cousins' estates also urge that the terms of the will demonstrate a clear intent to exclude Donna from the persons designated as ''my heirs at law,'' and that those words meant and were intended to mean testatrix' heirs determined as of the time the respective trust interests terminate.

Appellant testamentary trustee's appeal is in defense of the trust and against its termination as to the two-thirds interest of Emily Rutan. Appellant executor and appellant administrators likewise assert that the trust has terminated only as to one-third and must continue until the death of the remaining life tenant as to the other two-thirds.

The questions presented are:

1. To whom did testatrix refer when she used the words ''my heirs-at-law''?

2. Do the terms of the will indicate an intention on the part of testatrix to exclude her granddaughter Donna from the general class of "my heirs-at-law"?

3. May the trust be terminated?

■ "In the construction of wills the paramount rule, to which all others must yield, is that a will is to be construed according to the intention of the testator, as expressed therein, and this intention must be given effect as far as possible. (*Estate of Wilson,* 184 Cal. 63, 66-67 [193 Pac. 581]; *Estate of Newman,* 68 Cal.App. 420, 423 [229 Pac. 898]; *Estate of McCurdy,* 197 Cal. 276, 282 [240 Pac. 498]; *Estate of Phelps,* 182 Cal. 752, 756 [190 Pac. 17]; *Estate of Ritzman,* 186 Cal. 567, 568-569 [199 Pac. 783].)" *Estate of Lawrence,* 17 Cal.2d 1, 6 [108 P.2d 893].

■ Where a will is drawn by a lawyer whose competence is beyond question, the presumption that legal terms embodied in a will are used in their legal sense is all but conclusive. *Estate of Welsh,* 89 Cal.App.2d 43, 50 [200 P.2d 139].

■ Moreover, "It is also axiomatic that we must stand by the words of the will, and we cannot attribute to the testator any intention which cannot reasonably be drawn from the language of the testamentary document itself; but it is also the rule that in examining a testamentary document we must do so with a view to discovering the dominant testamentary scheme or general intention of the decedent; and in this connection the apparent meaning of particular words, phrases or provisions must be subordinated to such scheme, plan or dominant purpose." *Estate of Kruger,* 55 Cal.App.2d 619, 622 [131 P.2d 619].

■ And, as stated in 49 American Law Reports 177, 178, et seq.: "It is a general rule of testamentary construction, so universally recognized as to render superfluous a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law as if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator. . . .

"The rule above stated is not a rule of substantive law, but a rule of interpretation which has been adopted by the courts as one means of ascertaining the intention of the testator, as expressed in his will; and it never should be used to defeat

what, from the whole will, appears with reasonable certainty to have been his intention. (p. 180) . . .

"The expression of a contrary intention which will preclude the application of the rule must be clear and unambiguous; and it is not sufficient that there is in the will that which raises a doubt, ever so serious, as to whether the testator intended that the next of kin should be ascertained at some future time. (p. 181) . . .

". . . the circumstance that the first taker will be one of a class to whom the limitation over is made is generally held not to be incongruous with the ascertainment of the membership of the class as of the time of testator's death; even where the first taker is given an absolute interest subject to be defeated by condition subsequent, or a defeasible fee. (p. 182)

"Some of the cases appear to have taken the view that, where the person taking the particular estate is, at testator's death, the sole member of the class to whom the limitation over is made, it is a necessary inference that the gift over shall vest in the persons answering the description at the termination of the particular estate. But the great weight of authority is to the effect that the fact that, at the time of the making of the will, the person to whom a particular estate is given will presumably be, at the testator's death, the sole member of the class to whom the same property is limited, is not of itself sufficient to overcome the presumption that the membership of the class is to be ascertained at testator's death. (p. 183) . . .

"Slighter indications will, in the case of a gift to a single heir, suffice to take a gift out of the general rule, than would be required in the case of a gift for life to one of several heirs, followed by a gift of the corpus to the heirs generally. (p. 184)"

█ By the terms of the will, it is clear that the trust was to terminate when Donna reached the age of 50 years, under the direction to distribute the entire corpus of the trust to her at that time.

She died before reaching that age, unmarried and childless. As a result Paragraph Third (e) 1, 2, 3, 4, 5, became effective. By this paragraph, in the event that Donna predecease testatrix or die during the existence of the trust, leaving no children, the trustee is directed (1) to distribute two-thirds of the income to Emily for the remainder of her life; (2) to distribute one-third of the income to C. A. Rutan for his life; (3) upon the death of Emily to distribute two-thirds of the corpus to "my heirs-at-law"; (4) upon the death of the survivor of

"the two remaining beneficiaries under this paragraph of my will," i.e., Emily and C. A. Rutan, "to distribute the remainder of the corpus of my trust estate to my heirs-at-law."

Since C. A. Rutan died in April, 1942, the month in which rateable distribution of the corpus was made to the testamentary trustee, the bequest of income to him lapsed. This for the reason that he had to survive Donna to get it. During the interim all income from the trust estate was payable to Donna. And upon her death one-third of the corpus became subject to Paragraph Third (e)(5) of the will, to wit:

"Should any of the beneficiaries named in this paragraph of my will predecease me or be deceased at the time when this paragraph of my will would become operative for their benefit were they living (to-wit: the death of Donna), I direct that portion of the corpus of my trust estate, the income on which would have gone to them were they living, be distributed to my heirs-at-law in the manner and amounts as provided by the laws of the State of California."

In other words, this one-third interest in the corpus became distributable upon Donna's death to testatrix' heirs-at-law.

With the utmost precision, testatrix designated her granddaughter by name throughout the entire document by which she conferred many benefits upon her: all the income from the trust estate; an assured monthly payment; payments from the corpus at two and 10-year intervals; payments from corpus in case of illness or emergency; and finally the right to the entire trust estate when she reached the age of 50 years.

All of these provisions had reference to Donna's living or reaching the age of 50 years. They conferred no benefits on her if she died before 50 years. Because, when testatrix undertook to dispose of her estate in the event of Donna's death before age 50, she provided not for Donna, but for Donna's children; for life incomes for Donna's mother and for Donna's uncle. Eventually, she provided not for Donna or Donna's heirs, but for "my heirs-at-law."

These provisions are consistent with an intent to give the corpus of the trust to Donna only if she reached 50 years. They are utterly inconsistent with an intent to give the corpus to Donna before that age, or to embrace her within the class "my heirs-at-law."

When the will was written, Donna was the sole heir of testatrix, and Emily was Donna's only heir at law. By inserting paragraph (e) in her will, testatrix contemplated that

before it could become effective, Donna must have died before reaching the age of 50 leaving no children.

The very fact that testatrix then directed distribution of income to Emily for the remainder of her life, is a very strong indication that testatrix did not intend that Donna should be included within the class "my heirs-at-law."

Had testatrix intended that Donna's heirs should take the corpus, if Donna died after testatrix, leaving no children, it is reasonable to believe that she would have said "to the heirs of my granddaughter Donna Rutan," following the general tenor of the document, instead of "to *my* heirs-at-law."

The leading case of *Estate of Wilson,* 184 Cal. 63, 65, 68 [193 P. 581], appears to be decisive here. In that case the will provided: "All the real property . . . I give and devise unto my said son, to have and to hold the same for and during the term of his life; . . . it being my intention to devise unto him a life-estate . . . with remainder over at his death, to his then living children, and if he leaves no issue, then upon his death, all such real property shall be distributed among my heirs, as provided by the laws of the state of California, the same as if I had died intestate."

Testatrix Wilson had only one son. He survived testatrix. Said son died without living issue. His sole heir was his widow, who claimed that the son took under the limitation to heirs, and that she took through him. Other claimants were various nieces and nephews of testatrix who survived the son.

The Supreme Court upheld the claim of the latter group in the following language: ". . . It is self-evident that while the son, who was in the strict technical sense the sole heir apparent of this widow of sixty years of age, was an heir, he could not be 'heirs', nor could the real property be distributed 'among' him, the term 'distributed among' necessarily referring 'to a gift to more than two' heirs. (See *In re Hildebrandt's Estate,* 268 Pa. 132 [110 A. 760].) It is almost impossible to conceive that the testatrix, knowing, as she must be held to have known, that her son was the sole heir at law, taking the word 'heir' in the technical sense, would have used this language 'distributed among my heirs,' etc., to indicate a gift to him.

"Especially is this true in view of the fact that wherever before or after these words she referred to her son in the will she designated him as 'my son, Thaddeus McConnell', or 'my said son' or 'my said son, Thaddeus McConnell,' indicating that in every case where she intended to provide for or refer to him, she thus described him.

". . . It seems clear that in so far as her son was concerned, the provision specifically made for him were intended to be the sole provisions in his behalf, and that by the term 'my heirs' who were to take in default of issue of her son surviving her was meant *her* next of kin other than her son."

The court then held that the son's widow was not entitled to take, stating at page 71: ". . . We think it clear that the intention was that they (the heirs) should be determined as of the date of the termination of the life estate."

Likewise here it is clear that testatrix intended that "my heirs-at-law" should be determined at the death of Donna "during the existence of the trust, leaving no children."

Moreover, as said in *Estate of Boyd,* 24 Cal.App.2d 287, 289-290 [74 P.2d 1049]: "It is well settled that where the provisions of a will are capable of two interpretations, under one of which those of blood of the testator will take, while under the other the property will go to strangers, the interpretation by which the property goes to those of blood of the testator is preferred. (*Estate of Hartson,* 218 Cal. 536 [24 Pac.2d 171]; *Estate of Wilson,* 65 Cal.App. 680 [255 Pac. 283].)"

All of this leads to the conclusion that by the terms of her will, testatrix clearly indicated her intention to exclude Donna from the general class of heirs at law. And that by use of the words "my heirs-at-law," testatrix had reference to those persons answering that description at the termination of the respective interests in the trust estate.

It follows that the one-third interest, hereinbefore referred to, is distributable to the heirs at law of testatrix as determined at the death of Donna Rutan.

With respect to the two-thirds interest remaining in the hands of the testamentary trustee, testatrix did not intend that Emily during her own lifetime should receive any portion of the corpus of the trust estate. The *first condition* (Donna's death, leaving no children) having been met, testatrix then directs trustee to continue administering the trust as long as Emily shall live and not until the death of Emily "to distribute two-thirds of the corpus of my trust estate to my heirs-at-law." The *second condition* to distribution of the remaining two-thirds of the corpus was the prior death of Emily.

In addition to the direct grant of income to Emily for life, the will declares: "This is a trust for maintenance"; and also contains a so-called spendthrift clause, to wit:

"(f) Each beneficiary hereunder is hereby restrained from anticipating, encumbering, alienating, or in any other manner assigning his or her interest or estate in either principal or income, and is without power so to do, nor shall such interest or estate be subject to his or her liabilities or obligations, nor to judgment or other legal process, bankruptcy proceedings or claims of creditors or others. All income and/or principal shall be payable and deliverable only and personally to the respective beneficiaries entitled thereto."

Testatrix also provided that duration of the trust was not to extend beyond the death of the survivor of the following: Donna Rutan, Emily Clarke Rutan, C. A. Rutan, and the children of Donna Rutan living at testatrix' death.

In the circumstances, taking into consideration the fact that the trustee is given no power to invade the corpus of the trust for the benefit of Emily Clarke Rutan, termination of the trust would clearly be improper during her life.

■ Appropriate here is the following excerpt from *Estate of Easterday*, 45 Cal.App.2d 598, 604 [114 P.2d 669]: "It is the law in a majority of American jurisdictions that where a trust is established with the object of placing the trust property beyond the control of the beneficiary, effect may be given to this intention and termination of the trust denied, although all persons who will have an interest in the trust upon its termination are in being and *sui juris* and assign their interest to the sole life beneficiary, or otherwise consent to a termination of the trust. This rule applies even though there is no spendthrift provision in the trust."

The order appealed from instructs the trustee that "pursuant to paragraph (g) of the will it should exercise its discretion in favor of payment from corpus of the sum of $2,220.98 of emergency expenses of the last illness of Donna Rutan, specified in the Findings of Fact."

Paragraph (g) reads as follows: "In the event of illness, accident, or any unusual condition occurring in the life of Donna Rutan, to her, making it necessary for her to have more funds than her income provides at said time, I direct that my Trustee may, in its discretion, invade the corpus of my trust estate to provide for Donna Rutan and the children of Donna Rutan living at the time of my demise, in such exigency."

Appellant administrators object to payment of such expenses which were unpaid at the time of Donna's death, for

the reason that such payment would deprive the beneficiary properly entitled to the trust fund of the amount thereof.

Since the expense was incurred because of the illness of Donna Rutan during her lifetime, we are of the opinion that the instruction above recited was proper, pursuant to the provisions of paragraph (g) of the will.

This court is also of the opinion that the trial court properly instructed the trustee not to pay any part of "the obligation of $3,248.65 to Forest Lawn Memorial Park Association, for mortuary, funeral and burial services of Donna Rutan" for the reason that such payment "is not contemplated or permitted by Paragraph (g) of the will of decedent."

For the reasons stated, that portion of the order appealed from instructing the testamentary trustee respecting payment of emergency expenses and nonpayment of funeral expenses is affirmed. In all other respects, the order is reversed, with directions to the trial court to proceed in accordance with the views herein expressed. Costs on appeal are to be borne by the trust estate.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied August 31, 1953, and contestants and appellants' and respondent's petitions for a hearing by the Supreme Court were denied October 8, 1953. Edmonds, J., was of the opinion that the petition should be granted.