In the Matter of Construction of the Will of SARAH M. CARLIN, Deceased. ROY LONG et al., Appellants; WALTER T. CARLIN, Respondent.

Fourth Department, July 10, 1958.

*William J. Person* for appellants.

*J. Milford Newman* (*John G. Putnam, Jr.,* and *Albert R. Mugel* of counsel), for respondent.

HALPERN, J. This is an appeal from a decree of the Surrogate's Court of Genesee County in a will construction proceeding which held that the surviving husband of the testatrix, Sarah M. Carlin, "is the sole distributee of Sarah M. Carlin, deceased, and thereby entitled not only to the life use of the entire property of said deceased, but also to the gift and bequest of the remainder interest as well ".

The will is very short. The donative provisions are as follows:

" First. After the payment of all my just debts, funeral and testamentary expenses, I give, devise and bequeath the use of all my property, real and personal, to my husband, Walter T. Carlin and give him the privilege in case of necessity to use so much of the principal as may be necessary for his care and support.

" Upon the death of my husband, I give, devise and bequeath such of my property as shall then remain to my distributees under the laws of the State of New York."

Analyzing these provisions, we find a clearly expressed testamentary scheme. The testatrix intended (1) to give her husband the income from her estate for life; (2) to give him a limited right to invade the principal " in case of necessity " to

provide for his care and support; (3) to give so much of the principal as remained upon his death to the testatrix' distributees.

The will was executed on March 9, 1935. The testatrix died on October 13, 1944.

Both at the time of the execution of the will and at the time of the death of the testatrix, the testatrix' husband was her closest relative under the statutory table of distribution and he would be her sole distributee, if her distributees were determined as of that time. The testatrix also left her surviving an uncle and cousins, the survivors of whom would be her distributees, if her distributees were determined as of the time of the death of her husband.

The testatrix had never had any children and, at the time of the execution of the will, there was no reason to believe that she would have any before her death*; she had never had brothers or sisters and her parents were dead. Therefore, there was no possibility of anyone other than her husband being her distributee, if her distributees were determined as of the time of her death, provided only that he survived her.

In this situation, the inference is inescapable that the testatrix must have intended that the remainder should go to the persons who would be her distributees at the time of the death of her husband rather than at her own death. In making a gift " to my distributees " of what remained " upon the death of my husband ", she must have meant the persons who would be her nearest relatives as of that time. This is the only construction which is consistent with the testamentary scheme expressed in the will.

If the will were construed as requiring the determination of the distributees as of the time of the death of the testatrix, the result produced would be a wholly incongruous one. The testatrix' husband would then be the sole distributee and he would take the remainder as well as the life estate. The life estate would merge with the remainder in fee and the husband would acquire at once a present fee simple absolute, notwithstanding the clearly expressed intention of the testatrix to limit his legal interest to that of a life tenant.

Every aspect of the testamentary scheme would be frustrated if the will were construed as giving the husband a fee simple

---

* The petition for the probate of the will, which is referred to in the opinion below but is not printed in the record, shows that the testatrix was 61 years of age at the time of her death in 1944, so she was 52 years of age at the time of the execution of the will.

absolute. The provision giving the husband a limited power to use the principal in case of necessity would be rendered meaningless by this construction. As the owner of the fee, the husband could, of course, expend the principal as he pleased. There would be then no need for a provision giving him a "privilege" to use the principal. Neither would the limitation on the privilege be effective. As the sole owner of the estate, the husband would be in a position to expend or dissipate the principal at once, without regard to the amount currently needed for his support, even though this left him without any income during the rest of his life. The salutary purpose of the testatrix to protect her husband against his own improvidence would thus be defeated.

Furthermore, under the construction vesting the whole fee in the husband, he would be able to give or bequeath the property to relatives of his own or to strangers, thus defeating the testatrix' expressed intention that whatever remained on his death should go to "my distributees". Presumably, by this term she meant her own relatives. It is significant that while the husband was given the power to invade the principal during his lifetime, to the extent necessary for his care and support, he was not given any power to appoint the principal by will or, in any other manner, to dispose of the unconsumed balance of the principal on his death. This restriction would likewise be nullified by construing the will as giving the husband the whole fee.

The gift of the remainder to the testatrix' distributees is stated in the will in terms of a gift of whatever balance remains upon the husband's death after he has used as much of the principal as necessary. This formulation necessarily implies that the balance is to be paid over to some one other than the husband. Whether there will be any balance and, if so, how much, cannot be determined until the husband's death. It is therefore reasonable to infer that, under the testamentary scheme, the distributees are also to be determined as of that time.

On the other hand, it is wholly unreasonable to attribute to the testatrix an intention to give to her husband a fee by the circuitous method of giving him a life estate by name and then giving him the remainder by describing him as her "distributees". If the testatrix had intended to give her husband the whole fee, she could readily have so provided in a few simple words. There was no possible reason for the circumlocution.

It is hornbook law that the touchstone in all will construction cases is the intention of the testator, as ascertained from the language of the will, read as a whole in the light of the circumstances existing at the time of its execution (*Spencer* v. *Childs,* 1 N Y 2d 103, 107). The testator's intent "must be gleaned * * * from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" (*Matter of Fabbri,* 2 N Y 2d 236, 240). "The intention of the testatrix, so long as it is not contrary to some statute or to public policy, must govern" (*Salter* v. *Drowne,* 205 N. Y. 204, 212). Since the intention of the testatrix in this case is self-evident, the only question which need concern us is whether there is any rule of law which prevents us from carrying out her intention. We can find no such rule in the authorities.

It is true that there is a general rule to the effect that a testator's distributees are ordinarily to be determined as of the time of his death but this rule "is not a rule of substantive law, but a rule of interpretation, which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in the will; and it never should be used to defeat what, from the whole will, appears with reasonable certainty to have been his intention" (57 Am. Jur., Wills, § 1279, p. 848). When a gift is made to persons "to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances" (Restatement, Property, § 308). In our case, the intent of the testatrix to postpone the determination of her distributees to the time of the death of the life tenant is readily inferable from the "additional language" of the will in this case and from the "circumstances" at the time of its execution.

In a comment to the section quoted, the American Law Institute takes the view that where a testator gives a life estate to a person who is presumptively his sole heir and then gives the remainder in terms to his "heirs", the incongruity which would result from determining the heirs as of the time of the testator's death is of itself sufficient to warrant an inference of an intention to postpone the time of the determination of the testator's heirs to the death of the life tenant. "When A, by will, conveys property 'to B for life then to my heirs' and B is the sole

heir of A * * * the fact that * * * B is the sole heir of A at the death of A tends to establish that A intended his heirs to be ascertained as of the death of B, so that B is prevented from sharing in the limitation to the heirs of A" (Restatement, Property, § 308, comment k). To the same effect, see American Law of Property (vol. 5, § 22.60, pp. 441–443).

As we have seen, in our case there is a much greater incongruity than that resulting from a construction which gives the remainder in fee to a sole heir who had theretofore been given a life estate. There is the additional incongruity which grows out of the fact that the testatrix had expressly given the life tenant a limited power to invade the principal to the extent necessary for his care and support; this provision is wholly incongruous with a construction which gives the remainder in fee to the life tenant. This basic incongruity can be escaped only by postponing the time of the determination of the testatrix' heirs to the time of the death of the life tenant.

In its recent decision in *Matter of Sayre* (1 A D 2d 475, affd. 2 N Y 2d 929), this court stressed incongruity as one of the "sound reasons for determining the class of heirs of the testator, not at his death, but at the death of the life tenant" (p. 479). The incongruity in our case is greater than that in the *Sayre* case. The court pointed out in the *Sayre* case that if the heirs were determined in that case at the death of the testator, the estate of one of the testator's sisters would be allowed to "qualify for a share as an heir" even though by an earlier provision a gift to the sister in fee had failed because of her predecease of the life tenant. Under this construction, the sister's estate would only take a one-sixth share as an heir but even this incongruity was held to be sufficient to militate against the construction which produced it. The court went on to say that "for all the testator knew when he drew his will, she could have been his only heir at his death, in which case she would have received a vested remainder in fee". "Such an incongruity", the court concluded, "is evidence that the testator did not intend his heirs to be determined at the time of his death" (p. 480). In our case, the testatrix knew at the time she drew her will that her husband was certain to be her sole distributee as of the time of her death, if he survived her and took the life estate. A wholly incongruous result would be produced by construing the will as giving him the remainder in fee, to take effect upon his death, as well as the life estate. This incongruity is much stronger evidence than the incongruity in the *Sayre* case that the "testator [testatrix] did not intend

his heirs [her distributees] to be determined at the time of his [her] death '' (p. 480).

It is true that the decision in the *Sayre* case rested not only upon the element of incongruity but also upon the fact that the remainder to the heirs was ''secondary, contingent, and substitutional'' (p. 480). But it is evident from the portion of the opinion discussed above that the court recognized that complete incongruity of the type here present would of itself be sufficient to warrant an inference of an intention to postpone the time of the determination of the testator's heirs to the time of the death of the life tenant. The substitutional nature of the gift was held to be significant in the *Sayre* case, along with the element of incongruity, only because it furnished a clue to the intention of the testator. The ascertainment of the testator's intention was the objective of the court's inquiry in that case, as it is in all will construction cases. The factors mentioned were relied upon only as evidence of intention. If the intention to postpone the time of the determination of distributees is found, upon a reading of the whole will, it will be given effect, even if the gift to the distributees is primary and not substitutional (*Matter of Sayre, supra,* p. 479, citing *Matter of Wilson,* 294 N. Y. 903, affg. 269 App. Div. 665, which, as to this point, reverses 11 Misc 2d 579).

The significance of the substitutional and contingent nature of the gift to the testator's heirs in the *Sayre* case was that it had the effect of postponing to the time of the life tenant's death, the determination of whether the heirs would take at all. This, the court held, tended to support the view that the determination of the identity of the heirs should also be postponed to that time. The provision for the invasion of the principal for the husband's benefit in the will in our case, leaving to the remaindermen only the balance of the principal remaining unexpended on the husband's death, has a similar effect. It is uncertain whether anything will be left on the husband's death. The gift of the remainder is therefore contingent in the sense that, as a practical matter, the effectiveness of the gift depends upon the husband's not using up all the principal for his support during his lifetime. Therefore, under the reasoning of the *Sayre* case, the determination of the distributees who are to take should also await the end of the life estate. The fact that the gift of the remainder is, in form, a primary gift and not a substitutional gift is immaterial.

Indeed, in a case such as ours, where the avoidance of an obvious incongruity is the most important consideration, the fact that the gift to the distributees is a primary gift, instead

of a substitutional one, cuts against the respondent's position rather than in his favor. If the gift to distributees had been a substitutional one, it might have been argued that there was in fact no incongruity because the testator may well have intended that the life tenant should take the remainder in fee, in the event that his first choice, the gift to the primary remainderman, failed. "If the gift were made ' to A for life, and, if B survives A, to B in fee, but if B does not survive A, then to the testator's heirs ' [it] is quite conceivable that the testator might have intended to give the remainder to A if B did not survive A, and therefore the fact that A is the sole heir of the testator at testator's death does not require postponing the determination of heirs to a later date. If the limitations are simply ' to A for life, remainder to the testator's heirs,' it would be much more difficult to assume that the testator intended A to take the remainder " (2 Simes & Smith on Law of Future Interests [2d ed.], § 735, p. 210; cf. *Safford* v. *Kowalik,* 278 App. Div. 604).

Furthermore, in the case of some types of substitutional gifts, it is arguable that the testator expected that in all probability the intervening primary gift would take effect and thus avoid any incongruous result and he may not have cared much that in the remote event of the substitutional gift taking effect, there might be some incongruity. But, in our case, the gift of the remainder to distributees being a primary gift, there was no possibility of the incongruity being avoided by the taking effect of an intervening gift. The incongruity was plainly foreseeable and was certain to occur if the distributees were determined as of the death of the testator. There is much stronger reason for postponing the time of the determination of the distributees in such a case than there is in a case in which the occurrence of the incongruity is a mere possibility or a matter of chance (Restatement, Property, § 308, comment k, pp. 1716–1717).

Further support for the conclusion here reached is found in *Salter* v. *Drowne* (205 N. Y. 204, 212); *Stewart* v. *Giblett* (235 App. Div. 589); *Matter of Bishop* (126 Misc. 722, affd. 219 App. Div. 711).

*Matter of Bump* (234 N. Y. 60), principally relied upon by the respondent, will be found, upon analysis, to support the appellants' view rather than the respondent's. While the court in that case reiterated the general rule that the testator's heirs are ordinarily to be determined as of the date of his death, it recognized that that rule is not applicable "when a contrary intention appears" (p. 65). In the *Bump* case, there was a

gift of a life estate to the testator's wife with a remainder in fee to his daughter or her issue, if any, surviving the wife; if none, then a life estate to his sisters or the survivor of them, with a remainder in fee to the testator's heirs. The daughter predeceased the wife, leaving no issue. The question was who was entitled to the remainder in fee. The court found no basis in the will in that case for inferring a contrary intent and hence applied the general rule. The estate of the daughter was held to be entitled to the remainder in fee. The court pointed out, however, that this was not a completely incongruous result, since the daughter did not take as an heir the whole fee, which she would have taken if she had survived and had taken as a named devisee. "There is first carved from it the life estate of the sisters and only when that is exhausted does the remainder take effect" (p. 64).

In another part of its opinion, the court indicated even more strongly that if the application of the general rule would have produced a complete incongruity of the type here involved, the court would have found that of itself a sufficient basis for inferring an intention contrary to the general rule. The Surrogate had chosen an intermediate course among the possible constructions of the will and had decided that the testator's heirs should be determined as of the death of the testator's wife, the primary life tenant. As of that time, the sisters were the testator's heirs but the testator had already provided for a life estate for them and it would obviously be incongruous to give them the whole fee in the face of the testator's express limitation of their interest to that of life tenants. The court therefore rejected the Surrogate's construction. "Is it possible that he intended to designate them by the use of that word [heirs]; that in two succeeding clauses he first carefully provides for a life estate in their favor and then in addition gives them the fee? We think not" (p. 64). The court thus indicated in the *Bump* case that it would not adopt a construction of the term "heirs" which would produce the incongruous result of giving the whole remainder to a person whom the testator had specifically limited to a life estate.

Of course, as the incongruity is lessened in degree, the force of the reason for avoiding it diminishes (Restatement, Property, § 308, comment k, p. 1716). Thus, for example, if a life estate is devised to one of several heirs of the testator and the remainder is devised to the testator's heirs generally, there is little reason to attribute to the testator an intention to postpone the determination of the class to the time of the life tenant's death. There is little incongruity in allowing the life

tenant to take a share of the remainder as one of the heirs of the testator, along with his life estate (*United States Trust Co. v. Taylor,* 193 App. Div. 153, affd. 232 N. Y. 609; 5 American Law of Property, § 22.60, p. 445).

Similarly, even in a case dealing with a sole heir, if the life interest given to him is not an alienable legal life estate but is a life use under a spendthrift trust, it is arguable that there is not sufficient incongruity to require rejection of a construction giving him the remainder in fee. There is no merger of the equitable life use and the remainder; the life beneficiary cannot terminate the trust, even if he is the sole remainderman; the trust will still serve its intended purpose. " [T]he purpose of the testator to prevent B [the life beneficiary] from having control over the property during his lifetime is not defeated even if B is given the remainder interest " (5 American Law of Property, § 22.60, p. 444; *Matter of Roth,* 234 App. Div. 474).

In many of the cases dealing with a gift to heirs, next of kin or distributees, the provision is an end limitation, a sort of catch-all, following a complicated set of dispositions. In that type of case, it may be said that the testator had exhausted his primary purpose and was willing to let the law take its course, if all the preceding dispositions should fail (*Matter of Bump,* 234 N. Y. 60, 66, *supra*). If an incongruity should then result from the determination of the distributees as of the time of the testator's death, it might well be held that the incongruity should be disregarded on the ground that the testator had had no particular intent in mind at all with respect to the end limitation. But, in this case, the will was a simple one. The gift of the remainder to the testatrix' distributees was a part of her primary plan; it was not a catch-all expression adopted out of exhaustion of purpose or indifference, but a primary gift reflecting a specific intent in the mind of the testatrix as to the disposition of whatever remained of the principal on her husband's death. In this situation, it must be presumed that the testatrix intended to make a logically consistent disposition of her estate and not an incongruous one.

All incongruity disappears if the will is construed as providing for the determination of the testatrix' distributees as of the time of the death of the life tenant. It must be concluded that that is what the testatrix intended.

The decree of the Surrogate should be reversed and the will should be construed as giving the remainder to such persons as may answer the description of distributees of the testatrix at the time of the death of her husband.

All concur, except McCurn, P. J., and Kimball, J., who dissent and vote for affirmance in the following memorandum: We all recognize that in construing a will the intent of the testator is the primary object of search. The majority in this case agree that the general rule is that distributees are to be determined as of the date of death of the testator. Here there is nothing, as we view it, which impels a departure from the general rule. The conclusion that the testatrix did not intend that her husband who survived her should take the remainder interest but that such remainder should go to relatives of the half blood, ascertainable upon her husband's death, is a pure assumption and surmise as to what the testatrix intended. She used words of a present gift of the remainder which became vested upon her death, subject only to the life use of the husband. There are, in the will, no words of a future gift as to the remainder. The gift of the remainder was direct and primary. It was not substitutional. It was not contingent upon some future event. The only uncertainty was the amount. The vesting of estates is favored by the law. The general rule " is not affected by the fact that a life estate precedes the gift of the remainder; and, a life tenant may be the recipient of the remainder " (*Safford v. Kowalik*, 278 App. Div. 604, and cases there cited). We find nothing in the will which justifies the finding of fact as to the intent of the testatrix necessary to sustain the position taken by the majority. We prefer to adhere to the established rules which the courts of this State have established. (*Matter of Bump*, 234 N. Y. 60; *Matter of White*, 213 App. Div. 82.) The case of *Matter of Sayre* in this court (1 A D 2d 475) is readily distinguishable on the facts.

Present — McCurn, P. J., Kimball, Williams, Bastow and Halpern, JJ.

Decree reversed on the law and facts and matter remitted to the Surrogate's Court for entry of a decree in accordance with the opinion.