S. Samuel Di Falco, S.
The question here for construction is whether the remainder of the residuary trust is to pass to those persons who would qualify as the next of kin of the testator had he survived the life tenant and died immediately afterwards, or to the individual who would fall into that category if its composition is to be determined as of the actual date of his death, some 45 years prior to the termination of the trust.
The testator left his residuary estate in trust for the life use of his daughter, Mary Juliet Smith, directing that upon her death the principal and accumulated income be paid to her issue, or in default thereof, “is to go to my next of kin per stirpes and not per capita.” When the testator died in 1914, he was survived by his daughter, Mary Juliet, as his only distributee and next of kin. She died in 1959, unmarried and without issue, leaving a will which was admitted to probate in this court. Her entire estate was given to the New York Association for the Blind.
At the time of his death, the testator’s nearest relatives, other than his daughter, appear to have been two nieces, the children of a deceased brother. They died many years ago. There are now no living issue of any brother or sister of the testator. It is believed that the class of next of kin, constituted as if the testator had lived until 1959, would be a group of collaterals related to the testator in the sixth degree of kindred. The identity of the members of this group has not yet been definitively ascertained. The petition lists over 50 persons who may be related to the testator in the sixth degree, but the where *1083 abouts of a large number of them is unknown. Indeed it is not known whether or not all of these persons survived the trust term. In addition, the petition lists a number of persons related within the fifth degree of kindred and some whose degree of relationship is not known. Of course, the trustee does not know whether any of these persons survived the life beneficiary. All of this uncertainty has led the trustee and the Attorney-General to request that the remainder be paid to the State Comptroller for the benefit of unknown persons, but that request is opposed by some respondents who say that they will establish the identity of all who are entitled to share within the sixth degree and will eliminate the possible existence of nearer kindred.
The preliminary question which the court must decide is the question of construction of the will. The general rule applicable to a testamentary provision such as the one now before the court, seems well established. The Restatement of Property (§ 308) expresses it thus: “ When a limitation is in favor of the * * * ‘ next of kin ’ * * * of a designated person * * * and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances. ’ ’ As stated by Professor Page (4 Page, Wills [Bowe-Parker Rev.], § 35.9), the rule is that where “ the class of beneficiaries is described as ‘ heirs ’ or ‘ next of kin ’ of the testator, the class must be determined as of the death of the testator, unless the will plainly indicates otherwise. This is due to the fact that such a class imports descent or succession under the statute of descent and distribution. Rights under the statute are determined as of the death of the testator, and the class is, prima facie, fixed as of such time.” New York applies the same rule in the absence of a contrary intent expressed in the will or appearing by necessary implication. (Matter of Bump, 234 N. Y. 60; Matter of White, 213 App. Div. 82.)
Nothing in the text of the will of this testator explicitly fixes a time for determining the class of beneficiaries. Before examining the actual wording of the will, it will be helpful to advert to the canons of construction which are to guide us. Certain exceptions to the general rule have been developed. In that connection, the Restatement of Property discusses the factors which tend to establish an intent on the part of the testator to have the statute of distributions applied as of a time prior to the death of the designated ancestor (§ 308, Com- *1084 merits h to j) and the factors which tend to establish an intent to have that statute applied as of a time subsequent to his death (Comments Tc to n). Where the person to whom the prior interest is given is the sole next of kin of the testator, “ there is some incongruity in also giving such person all the interest under the limitation to * * * ‘ next of kin. ’ ’ ’ However, the tendency to establish an intent to fix the class as of some time subsequent to the ancestor’s death becomes weaker as this incongruity lessens. Thus, when the sole income beneficiary cannot terminate a trust even if he be the sole remainderman, “ the strength of the tendency is not so great ” (Comment Jc). The following is given as a further example of a lessening of the incongruity: “ If A conveys property by will 1 to B for life then to the children of B but if B dies without leaving children to my heirs, ’ the fact that B is the sole heir of A at the death of A tends to establish that A intended his heirs to be ascertained as of the death of B but the tendency again is somewhat weakened by the fact that B is not certain to acquire the complete interest in the property even if the heirs are ascertained as of the death of the ancestor A. This is due to the fact that the limitation to the children of B may deprive B of the property.” (Restatement, Property, § 308, Comment Tc.)
The more recent decisions in this State seem to incline toward fixing the class as of the date of the termination of the trust even in eases similar to that given in the Restatement, where the person named as life beneficiary is not certain to acquire the complete interest under the general rule. Thus in Salter v. Drowne (205 N. Y. 204, 209, 210) the will created three trusts, in each of which the decedent’s daughter had either a primary or secondary life use and the remainder was to be paid to the issue of the daughter “ and if none then to my next of kin.” (One trust involving realty read “ to my heirs at law ”.) At the time the will was made the daughter had one child, but that child predeceased her grandmother, so that when the decedent died, her only heir at law and next of kin was her daughter. The court said (p. 214): “ The purpose of the testatrix to provide for persons other than [her daughter] and the descendants of the testatrix is plain, and her use of the words as stated should be construed in accordance with her apparent intention, viz., that the distribution and conveyance be made to those that would have been her heirs at law and next of kin had she died intestate immediately after [her daughter]. The care with which she sought to preserve the property from the possession of her daughter negatives any claim that she intended to use the words 1 heir at law ’ and ‘ next of kin ’ in their strict and primary *1085 meaning.” However, the court also ruled that even if there were doubt about her actual intent to postpone vesting until the daughter’s death, the divide-and-pay-over rule would operate to bring about that result. The court cited a number of decisions in this State where somewhat similar provisions turned upon the application of that artificial rule. Aside from the application of that rule, the incongruity in the result under the general rule seemed to be the determining factor in this case.
Matter of Carlin (6 A D 2d 281, 282, affd. 6 N Y 2d 914) involved a legal life estate to the decedent’s husband, with power to use principal for his maintenance, and a gift of such ‘ ‘ as shall then remain to my distributees under the laws of the State of New York.” Here there was no substitutional gift and no room for the divide-and-pay-over rule, but here too, the court found that the wholly incongruous result produced by the general rule was sufficient to establish an intent to fix the class as of the husband’s death.
In Matter of Sayre (1 A D 2d 475, 477, affd. 2 N Y 2d 929) the factor of incongruity played a part, as the same court took some pains to point out in Matter of Carlin (supra, pp. 286-288), but there were other elements in the Sayre case. There the testator created a trust for the life use of his wife. At her death he devised and bequeathed the property to his children ‘ ‘ then living ’ ’. In the event that no descendants of his should be living at the time of his wife’s death, he gave the remainder to a sister, if she were then living, or if she were then dead, 1 ‘ unto my heirs at law and next of kin, according to the provisions of the Statutes of the State of New York relating thereto.” The testator died without issue. His sister predeceased his widow. The courts held that the remaindermen were to be determined as of the time fixed for distribution of the corpus. The court pointed out that the will created three classes of remaindermen. The first remainder was to the children of the testator living at the death of his wife. That remainder was held to be contingent. The second remainder, to the testator’s sister, was also held to be contingent because it was subject to the condition that she must survive the life beneficiary. The ultimate remainder ‘ ‘ dependent upon the failure of the first two, each of which was contingent, was itself contingent and substitutional. Until the death of [the sister] before the life tenant, it was uncertain whether the heirs would take at all. The remainder in their favor, being subject to a condition precedent, was contingent * * s. Since the remainder to heirs was secondary, contingent, and substitutional, the class of remaindermen should be determined as of the death of the life *1086 tenant * * *. That construction seems particularly appropriate where, as here, survivorship is a condition of the prior remainders. * * * Since he required survivorship as a condition of the first two remainders, it is unlikely that he intended his ‘ heirs at law and next of kin ’ to be determined as of his death, so that persons who predeceased the life tenant might nevertheless qualify as heirs ” (p. 480).
Several other decisions reach a similar result. Matter of Fishel (167 Misc. 145,146, affd. 256 App. Div. 915) also involved a trust for the widow for her life, then for the life of a son, and upon the latter’s death, remainder to his issue, or if he died without issue surviving him, “ to my next of kin.” Surrogate Foley drew a distinction between cases in which, on the one hand, there was either “ a primary gift of a remainder to the next of kin of the testator or the language of the will indicated an intention on the part of the testator to distribute the property as though he had died intestate ’ ’ and, on the other hand, cases where the gift of the remainder to distributees was a substitutional gift. Turning to the case before him he said: “ The primary gift is to a class, the members of which are to be determined at the termination of the trust. It is only on the non-existence of the members of this class that the alternative gift to the next of kin is to take effect. The primary gift is clearly contingent. The secondary gift is likewise contingent. The testator has indicated an intention to postpone vesting until the termination of the trust ” (p. 146).
Matter of Sayre has been followed in several lower court decisions (Matter of Thibaut, 6 Misc 2d 376; Matter of Herrick, 9 Misc 2d 938; Matter of Fisk, 27 Misc 2d 60; Matter of Powers, 27 Misc 2d 179; Matter of Waessel, 27 Misc 2d 694; Matter of Peterson, 28 Misc 2d 268; Matter of Maxwell, 28 Misc 2d 913). These cases appear generally to recognize and apply the rule of construction that where there is a primary gift to a class of remaindermen who are to be determined as of the termination of the trust and a substitutional gift to heirs in the event of a failure of the primary class, the intent to make the first remainder contingent is indicative of an intention to make the substitutional gift contingent. However, when the decisions are carefully examined, it is clear that in each case the court is endeavoring to ascertain the intention of the particular testator and that other factors, besides the mere rule of construction, go to shape the final result.
The testator, Isaac P. Smith, was a widower with only one child, Mary Juliet Smith. At the time he made his will, Mary was 28 years old. He had only one other child, who had died in *1087 infancy a few years before Mary was born. Apparently Mary never married. Thus when the will was executed, the testator knew that his sole heir at law and next of kin was his unmarried daughter. When the testator died some 10 years later the situation remained unchanged. In speaking of issue of the daughter, the testator was thinking only of future possibility. At the time of his death his daughter was 38 years of age.
The testator’s brother and his sisters had died before he made his will. His brother left two children. One of them Emily C. ICeddie is a legatee under the will, and her two sons are named as alternate beneficiaries in the event that Mrs. Keddie died before her uncle. The other niece was not explicitly named as a general or specific legatee. She was unmarried. The general and specific legacies are of minor value, except for a general legacy of $50,000 to daughter Mary. The entire residue is placed in trust for her benefit. Its inventory value is in excess of $400,000. There is no provision for invasion of principal for her benefit. In the event that lawful issue of hers shall survive her, the principal is to be paid to such issue as they, respectively, attain the age of 21 years. Only in the event that she should die ‘ ‘ leaving no lawful issue her surviving” is the substitutional gift to be effective, and the principal then “is to go to my next of kin per stirpes and not per capita.” The text of the will makes it clear that descendants of the daughter were not thought of as sharing in the gift to next of kin. If there were descendants, they would take under the primary gift, and not as next of kin. The text of the will makes it equally clear that the testator was not thinking of his daughter as his next of kin. For one thing, he explicitly stated that his next of kin were to share “ per stirpes and not per capita.” This kind of distribution was to be made at the end of the trust term and then only on the contingency stated. The trust would be set up only if his daughter — his sole heir apparent — should survive him. If she did not survive him, he would in practical effect die intestate. His whole plan envisioned her as surviving him. The clear wording of his will negates any idea of her taking as ‘1 next of kin. ’ ’ Hence it is reasonably clear that in the testator’s mind, neither his daughter nor her possible descendants could share in the remainder as next of kin. The only reasonable alternative reading of his plan is that he intended to describe those who would constitute his next of kin as of the date the trust ended. He probably realized the futility of trying to identify them when he was making his will. If he thought of them at all, he would have to think in terms of his nieces or their descendants. More probably he took no par *1088 ticular thought of particular persons, being content to let the remainder go as the law would direct if he died intestate at the end of the trust term. Not only under the canons of construction applied in this State, but more particularly under the text of this man’s will and under a fair reading of his testamentary plan, the remainder is to be distributed as of the time of the termination of the trust.
The court therefore holds that it was the intention of the testator that the trust remainder be divided among those who would constitute the statutory distributees of the testator if he had died in December, 1959 immediately after his daughter. Those who claim to be members of the class will be given an opportunity to prove their status.