[Civ. No. 10862.   Third Dist.   Sept. 3, 1964.]

MARCUS D. FULLER et al., Plaintiffs and Respondents, v. HENRY J. FULLER et al., Defendants and Appellants; RUTH FULLER et al., Defendants and Respondents.

Lopez & Haines and William E. Haines for Defendants and Appellants.

McKenzie, Arata & Murphy and Joseph P. Murphy, Jr., for Plaintiffs and Respondents.

Roy W. Blair, Rawlins Coffman and Noel Watkins for Defendants and Respondents.

PIERCE, P. J.—This proceeding was brought to determine the identity of the heirs of Daniel Fuller, deceased, and the shares which each takes of certain real property under his will. Two of twenty-five persons affected have appealed from the distribution decreed by the trial court.

The decedent by paragraph 3 of his will provided:

"Thirdly, I give and bequeath and devise the use of all of my real estate to my children . . . so long as any of said children are living.

"After the death of the last survivor of them I direct that said real estate be divided among the heirs of my said children, according to the laws of the State of California, to be theirs absolutely."

The date of this will is not before us. Daniel died in 1905. His heirs at law were five sons and a daughter. The last survivor of these children, Frederick, died July 10, 1961. The real property involved is two quarter sections in Shasta County, excluding therefrom an undescribed portion condemned by the state.

Daniel's six children left heirs at law living on July 10, 1961, representing several generations. These heirs are shown on a chart which we attach for convenience. [See next page.]

The petitioners are Marcus D. Fuller and Harold Hays, grandsons of the testator.

The controversy here is (1) whether the surviving widows of two of Daniel's sons (Ruth, widow of Archibald; Ethyl,

DANIEL FULLER

Frank Fuller    Charles O. Fuller    Henry M. Fuller    Archibald Fuller    Frederick Fuller    Austine (Hays) Farmer, nee Fuller

Ruth (his widow)

Ethyl (his widow)

| Rose C. Fuller Age 57 | Marcus D. Age 59 | Abigial J. Walter Age 52 | George A. Age 56 | Mary Dawson nee Fuller Dec. | Harold Hays Age 68 | Mary E. Ulihrach Age 64 | Robert Farmer Age 58 | Daniel Farmer Age 56 |

| Archie D. Dec. | Henry J. Age 60 | | | Josephine Abney nee Fuller Age 67 | Florence Reavis nee Fuller Age 52 | | Clara Weston nee Fuller Dec. |

| Ardis Jo Westerman nee Fuller Age 24 | Donald Dawson Age 45 | Charlotte Stone Age 42 | Mary J. Aldrich Age 39 | Dorothea Roberts Age 36 | Clara Martell Age 44 | William Weston Dec. | Charlotte Evans Age 38 |

| Deborah Age 11 | Mark Age 12 | Bradford Age 14 | Kathleen Age 16 | William Age 19 |

widow of Frederick—the last surviving son) inherit under the will; and (2) if so, how much?

The trial court held that the two widows were "heirs of . . . said children" of Daniel Fuller and distributed the real property by dividing it into six parts with each widow taking one part (1/6th to each) and the issue of the deceased children (grandchildren, great grandchildren and great great grandchildren of the testator) taking per stirpes. The court's reasoning will be explained below.

Appellants are Henry J. Fuller and George A. Fuller (two grandchildren). Petitioners, Marcus D. Fuller and Harold Hays, did not appeal but as "respondents" have filed briefs supporting appellants' contentions. Although the briefed position of all of the contesting parties is that the widows of Archibald and Frederick are not heirs at all, their strongly-urged second-trench position is that the widows, if heirs, are entitled to but a 1/12th share each at most.[1]

We hold, as the trial court found, that the widows are entitled to inherit as heirs but we also hold that the shares to which each is entitled is based upon the laws of intestate succession as though she took the separate property of her deceased spouse. Therefore each takes a 1/12th interest.

Appellants' arguments are founded upon statutory provisions and stated in terms of California's Probate Code adopted in 1931 and as now in effect. Preliminarily it must be noted that this court in *Estate of Wilson*, 65 Cal.App. 680, 687 [225 P. 283], held that the devise in a will of a contingent remainder to the heirs of the testatrix intended such heirs to be determined according to the laws of succession at the time of the will and not when the remainder vested. The case was one in which the "heirs" mentioned were those of the testatrix and it is at least vaguely inferable from the opinion the court considered that circumstance distinguishable from a case where the devise was (as here) to the heirs of another designated person. The *Wilson* rule has been criti-

---

[1]During oral argument Mr. Murphy, counsel for petitioners, stated: "With reference to the right of the widows to take I must state candidly to the court that I do not know whether the position that I have asserted in the brief is defensible in the light of the existing case law. It is my belief, and I have indicated this in my brief, that the intent of the testator was to leave the property along family lines so that children and grandchildren would benefit, but unfortunately from my point of view the literal language of the will refers to heirs and the term 'heirs' appears to have been defined rather stringently and literally by the California decisions."

cized (by Professor Ferrier in *Gifts to "Heirs" in California,"* 26 Cal.L.Rev. 413, 433) with the comment that it is not the weight of authority (*op. cit.* p. 433, note 67). In Simes and Smith, The Law of Future Interests, (2d ed.) section 732, it is stated that normally testator's construed intent will be to have laws of succession applied as they exist at the time of the vesting of the remainder. Here we do not know when the will was made but know it was made in or before 1905. Although there have been a number of changes in the statutes of succession applicable between 1905 and 1961 (which we will point out) these changes under the conclusions we reach will be immaterial. Nevertheless we note in the discussion below the provisions of both current and 1905 law.

In 1905, Civil Code section 1334 provided in part (and Prob. Code, § 108 now similarly provides) : "A testamentary disposition to 'heirs,' . . . of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the title on succession in this code."

Terms are "used as words of donation, and not of limitation, when the property is given to the person so designated directly, and not as a qualification of an estate given to the ancestor of such person." (Civ. Code, § 1335, now included in Prob. Code, § 108.) The "title on succession in this code" referred to in said Civil Code section 1334 contained the sections on intestate succession. (Civ. Code, §§ 1383 et seq.)

The contention of appellants that the two widows should be excluded is readily disposed of. ▆▆▆ Since the testator could not have known the "heirs" of his children living at the time of the death of said children, the gift was unquestionably a "class" gift, i.e., a gift of an estate "to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number." (4 Page on Wills (Bowe-Parker Revision) § 35.1, p. 487; 4 Witkin, Summary of Cal. Law, p. 3126.) ▆▆ Members of the class included all persons answering the description "heirs of my said children" on July 10, 1961, the date of the death of Daniel Fuller's last surviving child. (Civ. Code, § 1337, now Prob. Code, § 123; 4 Page on Wills, § 35.10,

p. 520.) If the testator had intended to vest the remainder of the real property in the *issue* of his then deceased children, he could easily have said so. Presumptively he did not so intend. ■ Despite inexactness it is quite obvious from its language that Daniel's will was drafted by a lawyer. ''Accordingly, it may be assumed that the legal terms embodied in the will were used in their technical sense.'' (*Estate of Northcutt*, 16 Cal.2d 683, 689 [107 P.2d 607].)

■ The words ''heirs of my said children, according to the laws of the State of California . . . '' as used here were words of donation and not of limitation.[2]

The surviving widows of Archibald and Frederick were their ''heirs.'' ■ The words ''heirs of my said children'' signify those who are to take under the laws of intestate succession. (Civ. Code, §§ 1334, 1335, now Prob. Code, § 108; *Dickey* v. *Walrond*, 200 Cal. 335, 339 [253 P. 706]; *Estate of Watts*, 179 Cal. 20 [175 P. 415]; *Hochstein* v. *Berghauser*, 123 Cal. 681 [56 P. 547]; *Estate of Miner*, 214 Cal.App.2d 533, 539 [29 Cal.Rptr. 601]; *Maud* v. *Catherwood*, 67 Cal. App.2d 636, 641 [155 P.2d 111]; Rest. of the Law of Property, § 305; 4 Witkin, Summary of Cal. Law, p. 3131.) ■ The two widows are takers under the laws of intestate succession as will be more particularly noted hereinafter. Being heirs of Archibald and Frederick, two of Daniel Fuller's children, they are entitled to share. (*Estate of Liddle,*

[2]Criticized dicta in *Dickey* v. *Walrond*, 200 Cal. 335, at p. 342 [253 P. 706], has suggested that where by will a testator vests a life estate in a person with the remainder over to that person's heirs at law, the case is one "where the rule in Shelley's Case would apply, had it not been abrogated, [and] the words 'heirs at law' are words of limitation"; wherefore the members of the class must take equally. Of that statement in the opinion it has been said:

"The fallacy of the conclusion that, since the abolition of the rule of Shelley's case, the word 'heirs' in a remainder to the heirs of a life tenant is a word of limitation, has been pointed out by an able commentator. 'It is admitting in one breath that the rule in Shelley's case has been abolished, and in the next breath saying that Probate Code section 108 will be applied as if the rule in Shelley's case still existed in California.' '' (Professor Ferrier, in *Gifts to ''Heirs'' in California*, 26 Cal.L.Rev. at p. 416, quoting Professor Turrentine *Suggestions for Revision of Provisions of the California Civil Code Regarding Future Interests* (1932) 21 Cal.L.Rev. 1, 25-26.) In the case at bench we are spared the necessity of wrestling with the problem of this dicta. Daniel, by adding after "heirs of my said children" the words "according to the laws of the State of California" clearly referred to the *laws of succession* and expressed an intent that ultimate distribution of the real property was to be in accordance with such laws. All parties to this controversy concede this.

162 Cal.App.2d 7 [328 P.2d 35]; Simes and Smith, The Law of Future Interests, § 736; Rest. of the Law of Property, § 305, subd. j.) The other heirs, of course, are the lineal descendants of the other children of the testator. (Prob. Code, §§ 222, 250.)

Having determined who the heirs of the children of the testator were at the time of the death of the last surviving child and that each is entitled to inherit, the question remains, what share does each of such heirs take?

When by will a testator has made a bequest or devise of property to the heirs of a designated person, it is presumed that by the designation "heirs" he intended the statute of intestate succession to apply not only to determine the members of the group but also the share which each shall take "unless a contrary intent . . . is found from additional language or circumstances." (Rest. of the Law of Property, Future Interests, § 310, p. 1730.)

Had all the testator's children died without surviving spouses but with surviving issue there would have been no problem. Part of Civil Code section 1386, subdivision 1 (now Prob. Code, § 222) not only fixes members of the group to inherit but fixes the share of each, to wit: equal if in the same degree of kindred, otherwise by right of representation.[3] (*Dickey* v. *Walrond, supra,* 200 Cal. 335, 339.) Similarly, there would be no substantial problem if only one statute of intestate succession in California fixed the share of a widow who survives her husband dying without issue. But in that circumstance *we have, and had in 1905, two different statutes of intestate succession,* one, Civil Code section 1402 (now, with changes, Prob. Code, § 201) relating to community property and the other, Civil Code section 1386, subdivision 2 (now Prob. Code, § 223) relating to separate property. Pursuant to these code sections, where separate property is involved, one-half goes to the surviving spouse and the other half (where the decedent's parents are dead) "to the children or grandchildren of any deceased brother or sister by right of representation." (Civ. Code, § 1386, subd. 2.) (Prob. Code,

---

[3]Said section provides: "If the decedent leaves no surviving husband or wife, but leaves issue, the whole estate goes to such issue; and if such issue consists of more than one child living, or one child living and the lawful issue of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living and the issue of the deceased child or children by right of representation."

§ 223, although differently worded, has the same result.) Community estate, however, as the law stood in 1905 went one-half to the surviving spouse; the other half in the absence of testamentary disposition by the predeceased spouse leaving no descendants was "subject to distribution in the same manner as the separate property of the husband." (Civ. Code, § 1402.) Under present Probate Code section 201 a surviving spouse is entitled to the whole of the community property in the absence of a testamentary disposition of one-half by the predeceased spouse. As applied in the case at bench, if the respective shares of the widows of Archibald and Frederick are to be determined according to the laws of intestate succession fixing the widow's share of the predeceased husband's separate property, the share of each would be 1/12th; if the shares are to be determined as they would have received the community estate under the 1905 law of succession (Civ. Code, § 1402), the shares of each would be 3/4ths of 1/6th, or 1/8th. If they are to inherit under the present law of community property succession each would receive 1/6th.

The trial court decided the widows were entitled to receive 1/6th each, as the sole heirs of Archibald and Frederick respectively. The learned judge did not fix this on the basis of the law of succession to community property or even discuss this. He stated in a memorandum opinion that the "rules suggested for construing language of this type do not provide help." He felt the testator's intent had been to have this property ultimately distributed under the "concept of family." He said, "I believe the families of all six children should share equally in this property."

We agree that the testator here had the "family concept" in mind but we cannot agree that construction aids are to be abandoned in determining the share which each family shall take. As we see it, both rule and reason require that the respective shares be fixed as though each heir took directly from the deceased child of Daniel Fuller and as though the interest taken was such decedent's separate property.

It is the rule in *Dickey* v. *Walrond, supra,* that Civil Code sections 1334 (now Prob. Code, § 108) and 1386 (now—as to the part applicable here—Prob. Code, § 223) must be resorted to *in every case* both to determine who the heirs of the person designated are and the share each takes. Civil Code section 1386 related (and Prob. Code, § 223 now relates)

to *separate* property. ██ Although in the *Dickey* case there was no comment on the reason for applying the law of succession applicable to separate property rather than that applicable to community, in our view the reason is manifest: Although the property actually being distributed is neither the separate nor community property of the deceased life tenants and the remainderman interests do not pass through them, it seems only reasonable to consider that from the viewpoint of the testator's construed intent it should be treated as though it were. Certainly he should not be deemed to have intended it to be regarded as though it were property acquired as a result of the joint efforts of his children and their spouses.

The cause is remanded to the superior court and that court is directed to modify the judgment by decreasing the undivided distributive interests of the two widows, Ruth Fuller and Ethyl Fuller, to 1/12th each, and increasing the interests of the other heirs on a per stirpes basis, all in accordance with the views expressed here. As so modified the judgment is affirmed. Each party shall bear his own costs on appeal.

Schottky, J., and Friedman, J., concurred.