[Civ. No. 23445. First Dist., Div. Three. Nov. 30, 1966.]

Estate of VICTORIA A. McKENZIE, Deceased. UNITED CALIFORNIA BANK, Petitioner and Respondent, v. MARGARET IVES LEONARD et al., Objectors and Appellants.

Cushing, Cullinan, Hancock & Rothert and Brian P. Burns for Objectors and Appellants.

Chase & Chase and Samuel J. Chase for Petitioner and Respondent.

DEVINE, J.—Victoria A. McKenzie executed her will on May 5, 1933. She died October 26, 1935. The will contains some relatively small legacies to relatives and friends, but the part which gives rise to this appeal is the residuary clause. This clause provides that the residue be placed in a testamentary trust, the income to be paid to the testatrix' nephew, Albert L. Chauvet, during his life, and after his death, to his wife, Della May Chauvet, if then living, for her life. Upon the death of both, "this trust shall terminate and all property therein or thereof shall belong to and go to my heirs at law, as the same shall be determined at the time of my death under the laws of the State of California." The will provides for invasion of the corpus of the trust fund at the discretion of the trustee, "In the event of misfortune, need or necessity on the part of my said nephew Albert L. Chauvet, or any member of his immediate family, including the said Della May Chauvet, his wife."

At her death, testatrix was a widow. She left neither children nor issue. A brother and three sisters had predeceased her.

At the time of testatrix' death, Albert L. Chauvet was 71 and his wife, Della, was 51. At no time did the couple have children or issue. Following testatrix' death, the income from the testamentary trust was paid to Albert L. Chauvet. He died intestate on August 7, 1948, leaving no issue, parent, brother, sister, or descendant of a brother or sister. His sole heir was his surviving widow, Della May Chauvet. After Albert's death the income from the testamentary trust was paid to Della. Della Chauvet died on January 26, 1964; at her death, the trust terminated. An *inter vivos* trust had been created by testatrix about two years before her will and was for the benefit of Della Chauvet. It is further described below.

At the time of testatrix' death, her heirs were (1) her nephew, Albert L. Chauvet; (2) her niece, Margaret S. Ives, daughter of testatrix' predeceased brother; (3) five grand-nieces and grandnephews, descendants of testatrix' predeceased sister. At the time of the termination of the trust in 1964, testatrix' nephew, Albert L. Chauvet, and her niece, Margaret S. Ives, were dead. One of the grandnieces had died, leaving a son.

The decree of distribution made in 1936 distributes the residue of the estate (the particular legacies had been distributed by ratable distribution) to the trustee for purposes of the trust. The names and residences of the "heirs, devisees and legatees" are given, but there is no specification as to which

of the persons named are heirs and which are legatees. Thus, though Albert L. Chauvet is given among the list, the decree does not state that he is an heir. The question on appeal finds no answer in the decree of distribution.

After the death of Della Chauvet, the trustee filed its 27th and final account, in which it asked that the court adjudicate the persons who should receive the property remaining in the trust estate. Thereupon, the daughters of Margaret S. Ives, who were the residuary legatees under the will, protested that no part of the McKenzie trust estate should be distributed in such manner as would follow from recognition of Albert L. Chauvet as an heir; and in this protest they were later joined by other descendants of Victoria A. McKenzie. Following argument and briefs, the trial judge, acting under section 1120 of the Probate Code, made his order decreeing that the estate should be distributed one-third to the personal representative of the estate of Albert L. Chauvet; one-third to a daughter and a granddaughter of Margaret S. Ives (one-sixth each); and one-third to five descendants of Ophelia Cuthbert, the predeceased sister of testatrix (in different fractions according to ancestry). We need not be concerned with the correctness of the decree insofar as it applies to distribution to anyone other than the personal representative of the estate of Albert L. Chauvet, because there has been no appeal except as to this single distribution.

The question in the case is whether Albert L. Chauvet is to be considered an heir for the purpose of distribution of the residuum. Appellants argue that because he was a beneficiary for life under the trust, and because he could not enjoy use of the corpus following the termination of the trust, and because there was little or no likelihood of his having issue, we should adjudge the intent of the testatrix to be the exclusion of Albert from the category of heirs. This, say appellants, could be done on either of two theories: the first, the proposition that testatrix meant those who would be her heirs at the time of termination of the trust as if that date had been the date of her death; and the second, the proposition that taking the time of ascertaining heirs to be the usual one, the date of testatrix' death, nevertheless a life beneficiary should not be considered an heir, absent any specific declaration by the testatrix.

*Time For Ascertaining Heirs*

The word "heirs" is a technical term and is used to designate the persons who would by statute succeed to the estate in case of intestacy. (*Estate of Watts,* 179 Cal. 20, 22

[175 P. 415] ; *Estate of Newman*, 68 Cal.App. 420, 424 [229 P. 898] ; *Estate of Baird*, 135 Cal.App.2d 333, 337 [287 P.2d 365] ; *Estate of Miner*, 214 Cal.App.2d 533, 539 [29 Cal.Rptr. 601].) Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense. (Prob. Code, § 106.) It is obvious that the McKenzie will was not drawn solely by the testatrix, but by a lawyer. Unless, therefore, the context, read in the light of the surrounding circumstances, clearly indicates a contrary intention, the technical sense of the word "heirs" must be taken. (*Lombardi* v. *Blois*, 230 Cal.App.2d 191, 198 [40 Cal.Rptr. 899] ; *Fuller* v. *Fuller*, 229 Cal.App.2d 532, 538 [40 Cal.Rptr. 393] ; *Maud* v. *Catherwood*, 67 Cal.App.2d 636, 641 [155 P.2d 111] ; *Estate of Thompson*, 18 Cal.App.2d 680, 684 [64 P.2d 984] ; *Estate of Northcutt*, 16 Cal.2d 683, 689 [107 P.2d 607].) ▇▇ In respect of the word "heirs" there is a special reason for taking the technical meaning, and that is the predilection of the law for early vesting of remainders. (Prob. Code, §§ 28, 123; *Estate of Newman, supra*, pp. 424-425.) ▇▇ The word "heirs," therefore, will, in the absence of clear and unambiguous language to show otherwise, include an heir who is made a beneficiary during his lifetime of the income from the whole or part of the estate. The remainder, although it cannot be enjoyed by him personally, becomes part of his estate. (Rest., Property, Future Interests, § 308, p. 1706; *Estate of Newman, supra*.)

There are cases in which the word "heirs" has not been given its technical meaning by the courts because the context has shown clearly and unambiguously that the word "heirs" was intended by the testator to refer to what the courts have sometimes called an "artificial group," that is, a set of persons who would have been heirs had the testatrix died at another, usually a later, time. The first class consists of cases in which there has been an expression of futurity in the testator's description of his "heirs." Thus, in *Estate of Miner, supra*, 214 Cal.App.2d 533, 536, the description was "my heirs in accordance with the laws of succession of the State of California, then in force" (the "then" referring to the date of termination of a trust) ; in *Estate of Layton*, 217 Cal. 451, 454 [19 P.2d 793, 91 A.L.R. 480], the reference is to "my then living heirs-at-law."

There are also the "sole heir" cases, in which the life

tenant was the sole heir of the testator but the will devised the remainder to testator's "heirs." It has been held that in the whole context of such a will the testator meant to exclude the life tenant from the category of heirs, because the sole heir obviously could not be plural. Thus, in *Estate of Wilson*, 184 Cal. 63, 65 [193 P. 581], the remainder was to be distributed "unto my heirs, . . . the same to be distributed among them according to the Californian laws of succession in cases of intestacy." In *Estate of Rutan*, 119 Cal.App.2d 592 [260 P.2d 111], the remainder provision was for testatrix' heirs at law although she had but one heir, the beneficiary of a trust. *In Re Carlin's Will*, 6 App.Div.2d 281 [176 N.Y.S.2d 112], also cited by appellants, is another "sole heir" case. *Estate of Hoover*, 16 Cal.App.2d 529 [60 P.2d 1010], combines the features of "sole heir" and "words of futurity."

There is another class of cases in which the word "heirs" has been held to refer to persons other than those who were heirs at the time of the testator's death. This is the class referred to in cases cited by appellants: *In Re Patterson's Estate*, 45 Misc.2d 797 [257 N.Y.S.2d 742] (remainder bequests contingent on grandson's survival); *Kimberly* v. *New Haven Bank*, 144 Conn. 107 [127 A.2d 817] (remainder contingent on death of grandchildren without living issue). In this type of case, the class of heirs is determined upon termination of the trust, because the gift to heirs was a substituted one, the primary gift being contingent. (Simes & Smith, The Law of Future Interests (2d ed.) § 735, p. 210.) The question whether the testator's heirs would take at all having been postponed until the resolution of the contingency, the question of the identity of the heirs in such cases has likewise been deemed to have been postponed by the testator. (See *In Re Sayre's Will*, 1 App.Div.2d 475 [151 N.Y.S.2d 506, 509-512].)

*Estate of Easter*, 24 Cal.2d 191 [148 P.2d 601], shows but an apparent exception to the general rule as to the time for ascertaining heirs, because in that case the decree of distribution was held to have superseded the will.

But the case before us does not fall into any one of the exceptions. It is not a "sole heir" case, because there were other heirs than Albert L. Chauvet at the death of the testatrix. Nor is the case one of substituted gift. The time of enjoyment is postponed until the death of both of the Chauvets, but not the determination of identity of the heirs. Nor is the case one which is covered by the decree of distribution, as in *Estate*

*of Easter, supra.* ▮▮▮ Finally, and most important, there is not only no expression of futurity in the description of the heirs, nor is there merely the mention of "heirs," but there is positive reference by the testatrix to her heirs "as the same shall be determined at the time of my death under the laws of the State of California." Appellants' proposition that the heirs should be determined as of the death of Albert L. Chauvet cannot be accepted.

### Asserted Exclusion of Life Beneficiary from Class of "Heirs"

Appellants' second theory is that even if we consider that heirs should be determined as of the date of testatrix' death, we should make bold to exclude the lifetime beneficiary. ▮▮ They argue, correctly, that the cardinal rule of the construction of a will is the ascertaining of the intent of the testator. (Prob. Code, § 101; *Estate of Thompson,* 50 Cal.2d 613, 617 [328 P.2d 1].) But this intent must be gained, if possible, from the terms of the will, and the courts are powerless to draw a will which in their belief would have served a testator's intent better than the will which he actually made. (*Estate of Lefranc,* 38 Cal.2d 289, 296 [239 P.2d 617]; *Estate of Hill,* 214 Cal.App.2d 812, 818 [29 Cal.Rptr. 814]; *Estate of Kincaid,* 174 Cal.App.2d 84, 88 [344 P.2d 85]; *Estate of Deacon,* 172 Cal.App.2d 319, 322, 323 [342 P.2d 261]; *Estate of Herreshoff,* 144 Cal.App.2d 597, 599, 600 [301 P.2d 457].) We take it from appellants' brief that they do not contend that there is an essential incongruity in allowing the life tenant to take a share of the remainder as one of the heirs of the testator along with his life estate, because this contention has generally been rejected. (Rest., Property, Future Interests, § 308, p. 1706; *Estate of Newman, supra,* 68 Cal.App. 420; *In Re Carlin's Will, supra,* 176 N.Y.S.2d 112, 120.) But appellants say that under the circumstances of this particular case, the testatrix' intention should be held to be exclusion of Albert L. Chauvet from the class of heirs. These circumstances and our conclusions follow.

First, it is pointed out that at the death of the testatrix Mr. Chauvet was 71 years old, and his wife was 51, that they were childless, that testatrix must have realized the improbability or impossibility of their having issue, and that, therefore, she must have realized that they would leave no one who would have particular claims upon or need for any part of the remainder. But this overlooks some important considerations. It was not impossible that Mr. Chauvet might have had chil-

dren if his wife, Della M. Chauvet, had died and he had remarried. It was possible, too, that there would be an adoption, for example, if he had remarried and had adopted a stepchild. Besides, one close to a testatrix, as Mr. Chauvet undoubtedly was, may be thought by her to have very good use of a remainder for his own testamentary disposition to friends, to charities, or even possibly to one or more of his cousins, among them appellants herein. ██ Actually, none of these things occurred, but in the interpretation of a will we must look to conditions as they were at the execution of the will. (*Estate of Kaufman*, 25 Cal.2d 854, 861 [155 P.2d 831] ; 4 Page on Wills, § 30.8, pp. 55-56.) Finally, there is the consideration that if testatrix wished to exclude Albert, an heir, from the category of heirs, she could have done so very simply, by saying so. (See *Fuller* v. *Fuller, supra*, 229 Cal.App.2d 532.)

It is argued by appellants that the provision for rather strict control of the corpus of the trust (invasion being allowed only in case of misfortune, or necessity, and at the discretion of the trustee) shows that testatrix intended to preserve the estate for the benefit of others than the Chauvets. But this is not necessarily so. Her intention may very well have been simply to make sure that during the lifetime of the Chauvets the estate would remain in order to provide a steady income for them. ██ Besides, it is to be remembered that Albert L. Chauvet was not the sole heir; therefore, the presence of the provisions restricting the life beneficiaries' access to the principal does not, as it did in *In Re Smith's Estate*, 42 Misc.2d 1081 [249 N.Y.S.2d 614], cited by appellants, a "sole heir" case, become a weighty indication of exclusion of the beneficiary from the category of "heirs."

Next, it is argued that the *inter vivos* trust shows a pattern of the testatrix' intended dispositions. The trust provides for disposition of the remainder to the trustor's (testatrix') legal heirs and next of kin who would be entitled to succeed under the laws applicable at the termination of the trust. But the trust instrument also provides that the remainder shall be disposed of in accordance with the will of the trustor if she should leave a will. Two years later she did leave the will described above, with its different disposition of the remainder. When we compare the two instruments, we find that the testatrix, in the earlier one, the trust, made a disposition which is agreeable to appellants' position, but in the later she

made a radical change. We are not free to say that she intended to retain the earlier disposition.

Finally, appellants argue the proposition that where a will is capable of two constructions, under one of which those of the blood of the testator will take, while under the other the property will go to strangers, the former construction is preferred. (53 Cal.Jur.2d, Wills, § 400, p. 680.) They point out that Mr. Chauvet apparently left but one heir, his wife, that apparently he died intestate, and that his share of the remainder of the McKenzie trust will, unless the decree be reversed, probably go to the heirs of Della Chauvet. But in order to rely on this nonstatutory rule of construction, appellants have had to depend on events which have occurred since the death of testatrix in 1935. It was possible, at the time Mrs. McKenzie executed her will, that in the long distant future Mr. Chauvet would leave a will disposing of his share of the remainder to those who would be blood relatives of himself and Mrs. McKenzie. If he had been the later of the two Chauvets to die and had not remarried, no doubt the blood relatives would have taken his share by the laws of succession. The fact, if it be a fact,[1] that Mr. Chauvet's share of the remainder will go to others than blood relatives of testatrix does not give him a greater right than the other heirs had. Each of the heirs surviving testatrix might have disposed of his share of the remainder to strangers of the blood of Mrs. McKenzie.

The rule of interpretation favoring those of the blood of the testator does not have large appeal to the court when those persons are as remote as grandnephews, grandnieces and a great-grandnephew.

Appellants cite Halbach, *Future Interests: Express and Implied Conditions of Survival* (1961) 49 Cal.L.Rev. 297, 319, as stating that it seems unnatural that the testator's notion of who is to take the remainder would encompass one at whose death the remainder is to become possessory, and that this circumstance ought to be recognized as requiring a distinct exception to the general rule on heirs and to the rule of early vesting. But in a later article, *Stare Decisis and Rules of Construction in Wills and Trusts* (1964) 52 Cal.L.Rev. 921, 934, fn. 43, Professor (now Dean) Halbach says that: "Although, without legislative activity, overruling the basic rule [of determining heirship by technical meaning] seems inadvis-

---

[1] The record is not clear on this point.

able once it has become well established, courts should attempt to develop clear-cut rules for deciding cases in the yet gray areas involving possible exceptions.'' This case could not be decided in appellants' favor without change of the basic rule and without distortion of the words of the will.

Order affirmed.

Draper, P. J., and Salsman, J., concurred.